JUDGE FRANK MONTALVO

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## El PASO DIVISION



| | |
|---|---|
| **BRANDON CALLIER,** | § |
| | § |
| | § |
| **Plaintiff,** | § |
| | § |
| **v.** | § |
| | § |
| **WIDE MERCHANT INVESTMENT, INC.,** a | § |
| California Corporation, and **DAVID BOEM** | § |
| **JOON KIM** | § |
| | § |
| **Defendants.** | § |
| | § |

# EP22CV0123

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1. The Plaintiff is BRANDON CALLIER ("Callier"), a natural person, and was present in Texas for all calls, in this case in El Paso County.

2. Defendant WIDE MERCHANT INVESTMENT, INC. ("Wide Merchant") is a Corporation organized and existing under the laws of California and can be served via registered agent David Kim at 3580 Wilshire Boulevard, Suite 160, Los Angeles, California 90010.

3. Defendant DAVID BOEM JOON KIM ("Kim") is a natural person, resident of California and Chief Financial Officer of Wide Merchant Investment, Inc and be served at 428 S June Street, Los Angeles, California 90020.

### JURISDICTION AND VENUE

4. <u>Jurisdiction</u>. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

5. This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 because that claim arises from the same nucleus of operative fact, i.e., Defendants' telemarketing robocalls to Plaintiff; adds little complexity to the case; and doesn't seek money damages, so it is unlikely to predominate over the TCPA claims.

6. **Personal Jurisdiction.** This Court has general personal jurisdiction over the defendant because they have repeatedly placed calls to Texas residents, and derive revenue from Texas residents, and they sell goods and services to Texas residents, including the Plaintiff.

7. **Venue.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District. Residing in the Western District of Texas when he received a substantial if not every single call from the Defendants that are the subject matter of this lawsuit.

8. This Court has venue over the defendants because the calls at issue were sent by or on behalf of the above-named defendants to the Plaintiff, a Texas resident.

**THE TELEPHONE CONSUMER PROTECTION**

**ACT OF 1991, 47 U.S.C. § 227**

9. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

10. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

11. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

12. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

13. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

14. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

15. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

16. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations*

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

3

*Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

17. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

18. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

19. The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

20. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

4

21. A corporate officer involved in the telemarketing at issue may be personally liable under the
    TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist.
    LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate
    actors can be individually liable for violating the TCPA where they had direct, personal
    participation in or personally authorized the conduct found to have violated the statute."
    (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408,
    415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid
    individual liability, the TCPA would lose much of its force.").

### The Texas Business and Commerce Code 305.053

22. The Texas Business and Commerce code has an analogous portion that is related to the
    TCPA and was violated in this case.

23. The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or
    subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

### FACTUAL ALLEGATIONS

24.     Plaintiff has been on the National Do-Not-Call Registry since December 2007.

25.     Plaintiff has received over a hundred of calls within a twelve-month period to his
personal cell phone (915) 383-4604 from a company named Synergy Financial ("Synergy")
calling on behalf of Defendant Wide Merchant soliciting business funding.

26.     With information and belief Synergy Financial is an offshore company based out of
Australia.

27.     On March 15, 2022, Plaintiff applied and submitted a DocuSign to Synergy for the sole
purposes of identifying the U.S. company Synergy was calling on behalf of.

5

28.     On March 17, 2022, Plaintiff received a contract agreement to sign from Synergy that contained the information of Defendant Wide Merchant Group and revealed the true identity of the company responsible for the illegal robocalls.

29.     On March 21, 2022 Plaintiff responded to a follow up text message received by a representative from Synergy named Aaron Cruz that states as follows:

Aaron: "Any updates on the signed contract? Should I void the contract?" 9:10am
Plaintiff: "I am traveling" 2:57pm
Aaron: "Should I void the offer then?" 2:57pm
Plaintiff: "Yes. I'm tired of the constant calls. Please don't call again." 2:57pm
Aaron: "Why would you be tired?" 2:58pm


30.     Aaron continued to text and call Plaintiff fourteen times within 30 minutes after Plaintiff explicitly advised Aaron to stop calling.

31.     Defendant Wide Merchant is aware of Synergy's unlawful robocalling and their do not call violations.

32.     Defendant Wide Merchant is aware of and sanctioned Synergy's actions.

33.     Synergy acts as an authorized agent of Defendant Wide Merchant.

34.     There's essentially no difference between Synergy and Defendant Wide Merchant.

35.     Defendant Kim controls and dominates Defendant Wide Merchant.

36.     Defendant Kim is aware of the TCPA violations and personally participates in, and authorizes, the violations by ratifying the contract with the telemarketers, paying compensation to the telemarketers and refusing to take actions to stop the unlawful behavior because it benefits Defendant Kim financially.

37.     Synergy on two occasions used a spoofed local area code in order to trick Plaintiff to thinking the calls were local and availed themselves of the resident forum.

38. Plaintiff received the following calls from Synergy (Table A).

| Number | Date | Time | Caller ID | Notes |
|:---:|:---:|:---:|:---:|:---:|
| 1 | 02/03/2022 | 2:35 PM | 917-765-3437 | Call from Dan Brown |
| 2 | 02/03/2022 | 3:06 PM | 917-765-3437 | Call from Dan Brown |
| 3 | 02/03/2022 | 4:23 PM | 917-765-3437 | Call from Dan Brown |
| 4 | 02/04/2022 | 12:05 PM | 917-765-3437 | Call from Dan Brown |
| 5 | 02/18/2022 | 9:53 AM | 915-921-1529 | Missed Call |
| 6 | 02/18/2022 | 9:53 AM | 915-921-1529 | Telemarketer for Synergy |
| 7 | 02/18/2022 | 2:55 PM | 917-764-6878 | Direct call from Synergy |
| 8 | 02/22/2022 | 8:26 AM | 917-764-7079 | Direct call from Synergy |
| 9 | 02/22/2022 | 9:36 AM | 917-764-7079 | Direct call from Synergy |
| 10 | 02/22/2022 | 9:36 AM | 917-764-7079 | Direct call from Synergy |
| 11 | 02/22/2022 | 10:22 AM | 917-764-7079 | Direct call from Synergy |
| 12 | 02/22/2022 | 12:48 PM | 917-764-7079 | Direct call from Synergy |
| 13 | 02/22/2022 | 1:01 PM | 917-764-7079 | Direct call from Synergy |
| 14 | 02/22/2022 | 3:04 PM | 21093 | Automated Short Text |
| 15 | 02/22/2022 | 3:05 PM | 21093 | Automated Short Text |
| 16 | 02/24/2022 | 3:05 PM | 21093 | Automated Short Text |
| 17 | 03/03/2022 | 3:01 PM | 21093 | Automated Short Text |
| 18 | 03/07/2022 | 11:17 AM | 21093 | Automated Short Text |
| 19 | 03/07/2022 | 1:15 PM | 21093 | Automated Short Text |
| 20 | 03/16/2022 | 9:02 AM | 21093 | Automated Short Text |
| 21 | 03/16/2022 | 9:02 AM | 21093 | Automated Short Text |
| 22 | 03/18/2022 | 2:41 PM | 21093 | Automated Short Text |
| 23 | 03/21/2022 | 2:58 PM | 917-387-4655 | Text Message from Aaron Cruz |
| 24 | 03/21/2022 | 2:58 PM | 917-387-4655 | Text Message from Aaron Cruz |
| 25 | 03/21/2022 | 3:00 PM | 917-387-4655 | Text Message from Aaron Cruz |
| 26 | 03/21/2022 | 3:01 PM | 917-387-4655 | Text Message from Aaron Cruz |
| 27 | 03/21/2022 | 3:01 PM | 917-387-4655 | Text Message from Aaron Cruz |
| 28 | 03/21/2022 | 3:02 PM | 917-387-4655 | Call from Aaron Cruz |
| 29 | 03/21/2022 | 3:02 PM | 917-387-4655 | Call from Aaron Cruz |
| 30 | 03/21/2022 | 3:03 PM | 917-387-4655 | Call from Aaron Cruz |
| 31 | 03/21/2022 | 3:03 PM | 917-387-4655 | Call from Aaron Cruz |
| 32 | 03/21/2022 | 3:04 PM | 917-387-4655 | Call from Aaron Cruz |
| 33 | 03/21/2022 | 3:04 PM | 917-387-4655 | Text Message from Aaron Cruz |
| 34 | 03/21/2022 | 3:05 PM | 917-387-4655 | Call from Aaron Cruz |
| 35 | 03/21/2022 | 3:05 PM | 917-387-4655 | Call from Aaron Cruz |
| 36 | 03/21/2022 | 3:28 PM | 917-387-4655 | Call from Aaron Cruz |
| 37 | 03/28/2022 | 10:08 AM | 917-261-3813 | Sent Email after phone call |
| 38 | 03/30/2022 | 12:41 PM | 917-387-4655 | Call from Aaron Cruz |
| 39 | 03/30/2022 | 3:30PM | 917-261-3813 | Sent Email after phone call |
| 40 | 03/31/2022 | 12:06 PM | 915-285-2010 | Received call from Telemarketer transferred to Michael Gruber |
| 41 | 04/01/2022 | 8:43AM | 915-302-7171 | Received call from Telemarketer |

| | | | | transferred to Michael Gruber |
|---|---|---|---|---|
| 42 | 04/04/2022 | 11:15AM | 915-302-7171 | Missed Call |
| 43 | 04/05/2022 | 11:35AM | 915-302-7171 | Received call from Telemarketer transferred to Michael Gruber |
| 44 | 04/05/2022 | 2:00PM | 917-261-3813 | Missed Call |
| 45 | 04/07/2022 | 2:46PM | 917-387-4655 | Missed Call |

39.     Defendants employ outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

40.     None of the Defendants registered pursuant to § 302.101 of the Texas Business & Commerce Code to provide telephone solicitations. The https://direct.sos.state.tx.us/telephonesearch.asp site ("Texas Registration Database") does not contain any of the Defendants' registrations.

41.     None of the Defendants qualify for an exemption under § 302.053.

42.     No emergency necessitated none of the alleged illegal robocalls.

43.     The Defendants never sent Mr. Callier any do-not-call policy.  Plaintiff sent an internal do-not-call policy request to info@synergyfinancellc.com and info@widemerchantgroup.com.

44.     On information and belief, the Defendants did not have a written do-not-call policy while they were sending Mr. Callier the unsolicited calls.

45.      On information and belief, the Defendants did not train its agents who engaged in telemarketing on the existence and use of any do-not-call list.

46.     Defendants participated in, facilitated, directed, authorized, knew of or willfully ignored the false and misleading sales practices and unlawful robocalling, while knowing facts that required a reasonable person to investigate further, and approved, and ratified the conduct of their employees, agents, and co-conspirators to engage in the false and misleading sales practices and unlawful robocalling.

8

47. Mr. Callier has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

## VICARIOUS LIABILITY

48. Defendant Wide Merchant is vicariously liable under the theories of implied authority, apparent authority, and ratification, and as well as liable because any other result would impair the underlying purpose of the TCPA.

49. "A[n] entity may be held vicariously liable for violations of the TCPA 'under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification.'" Aranda v. Caribbean Cruise Line, Inc., 179 F. Supp. 3d 817, 831 (N.D. Ill. 2016) (Quoting In re Joint Petition filed by Dish Network, LLC, 28 F.C.C. R. 6574, 6582 ¶ 28 (2013)). "Formal Agency" in this context means actual authority, which may be express or implied. Id,.

50. Defendants Wide Merchant gave express authority and apparent authority to Synergy Financial with full knowledge the administration of sales and solicitation of sales of the business funding services marketed as a result of the contract would be marketed using an automatic telephone dialing system ("ATDS").

51. Defendant Wide Merchant has ratified the conduct and behavior of Synergy Financial by repeatedly signing contracts to hire them to administer sales and the solicitation of sales of their business funding services with the full knowledge and expectation Defendants would violate the TCPA.

## DEFENDANT KIM IS PERSONALLY LIABLE

52.     Defendant Kim refuses to take any action to stop or curtail the unlawful sales practices
and robocalling because these practices benefit Defendant Kim financially.

> "If the officer directly participated in or authorized the statutory violation, even
> though acting on behalf of the corporation, he may be personally liable.  See *United*
> *States v Pollution Serv. Of Oswego, Inc.*, 763 F.2d 133, 134-135 (2nd Cir.1985)
> The "well-settled" tort rule provides that "when corporate officers directly
> participate in or authorized the commission of a wrongful act, even if the act is done
> on behalf of the corporation, they may be personally liable." *General Motos*
> *Acceptance Corp. v. Bates*, 954 F.2d 1081, 1085 (5th Cir. 1992).  The Fifth Circuit
> has elaborated that "the thrust of the general [tort] rule is that the officer to be held
> personally liable must have some direct, personal participation in the tort, as where
> the defendant was the 'guiding spirit' behind the wrongful conduct….or the 'central
> figure' in the challenged corporate activity." *Mozingo v. Correct Mfg. Corp.*, 752
> F.2d 168, 174 (5th Cirt. 1985) (Citing *Escude Cruz v. Ortho Pharmaceutical Corp.*,
> 619 F. 2d 902, 907 (1st Cir.1980)) (Citing *Texas v. American Blastfax, Inc.*, 164 F.
> Supp. 2d 892 (W.D. Tex. 2001)
>
> Quoting Texas v. American Blastfax:
>
> The Court finds the above principles applicable to the TCPA that is, an officer may be
> personally liable under the TCPA if he had direct, personal participation in or
> personally authorized the conduct found to have violated the statute, and was not
> merely tangentially involved.  Individuals who directly (and here, knowingly and
> willfully) violate the TCPA should not escape liability solely because they are
> corporate officers.  As the State persuasive argues, to hold otherwise would allow the
> individual defendants to simply dissolve Blastfax, set-up a new shell corporation, and
> repeat their conduct.  Congress surely did not intend to permit such a result in passing
> the TCPA.
>
> To be clear, the Court finds Greg and Michael Horne were the "guiding spirits" an the
> "central figures" behind the TCPA violations.  They were the two persons who

10

controlled all of Blastfax's day-to-day operations. They both had direct, personal involvement in and ultimate control over every aspect of Blastfax's wrongful conduct that violate the TCPA, and/or directly controlled and authorized this conduct. And they did so with their eyes and pocketbooks wide open. After October 5, 2000, Greg and Michael Horne had good reason to believe they were running a business that violated the TCPA. On February 9, 2001, they knew they were. Yet they continued to direct their company to send unsolicited intrastate fax advertisements. This is fare more than a simple derivative liability case. Accordingly, the Court *899 holds defendants Greg and Michael Horne are jointly and severally liable with Defendant Blastfax, Inc., for all TCPA damages in this lawsuit." Texas v. American Blastfax, Inc., 164 F. Supp. 2d 892 (W.D. Tex. 2001)

53.     The Same Court held that corporate officers were also personally liable for DTPA violations

The State contends Greg and Michael Horne are personally liable for any DTPA damages because they were solely responsible for the violating conduct.....For the same reasons discussed in finding the individual defendants personally liable under the TCPA, the Court agrees. See, e.g., *Barclay v. Johnson*, 686 S.W.2d 334, 336-37 (Tex. Civ. App.-Houston [1ST Dist.] 1985, no writ) (finding personal liability for corporate officer in DTPA misrepresentation claim, based on general rule that "a corporate agent knowingly participating in a tortious of fraudulent act may be held individually liable, even though he performed the act as an agent for the corporation......Accordingly, the Court finds defendants American Blastfax, Inc., Greg Horne and Michael Horne are jointly and severally liable for $6,000 in damages for their violations of the DTPA." *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001

54.     At all times material to the Complaint, acting alone or in concert with others, Defendant Kim has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Defendant Wide Merchant including the acts or practices set forth in this Complaint.

55.     Defendant Kim is the principal director and operator of Defendant Wide Merchant controls the day-to-day operations of Wide Merchant and directed their

employees, agents, salespersons, and solicitors to make TCPA violating phone calls and to solicit their business funding services.

56.     Defendant Kim approved the telemarketing scripts, signed the contracts, paid commissions for the illegal behavior, and directed the illegal calls to be made for his financial benefit.

57.     Defendant Kim is not merely a bystander.  His is the mastermind that scheme, planned, directed, initiated, and controlled the illegal and fraudulent behavior.

58.     Defendant Kim is well aware his conduct violated the TCPA and Tex. DPTA and refused to alter their behavior.  Defendant Kim is the sole director Wide Merchant and the only person with the power to make the unlawful, fraudulent, and unethical behavior stop.  Yet, Kim has taken no steps to stop the behavior because the behavior benefits Kim financially.  Defendant Kim breaks the law with his eyes and pocketbooks wide open.

59.     Defendants Wide Merchant and Kim should be held jointly and severally liable for both the TCPA violations and Tex. Bus. Com. Code 302.101 via the Tex. DTPA because they actually committed the conduct that violated the TCPA and Tex. DTPA, and/or they actively oversaw and directed this conduct.

60.     Defendant Kim should be held liable because to do otherwise would simply allow him to dissolve Wide Merchant and set up a new corporation and repeat their conduct.  This would result in both the TCPA and DTPA being unenforceable.

## THE SELLERS SHOULD BE HELD LIABLE TO UPHOLD THE DETERRENT EFFECT AND PURPOSE OF THE TCPA

61. As the court ruled in Jackson v Caribbean Cruise Line, Inc., the defendant sellers should be held liable for their violations of the TCPA. Courts have looked at the purpose of the TCPA and found that not holding the sellers liable through vicarious liability would undermine the purpose of the TCPA.

62. Every entity in the application for "business funding" should be deemed a beneficiary of the calls and held liable for damages under the TCPA under vicarious liability. Sellers are in the best position to monitor and police third party telemarketer's compliance with the TCPA and to hold otherwise would leave consumers without an effective remedy for telemarketing intrusions.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES
## AS A RESULT OF THE CALLS

63. Defendant's calls harmed the Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

64. Defendant's calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

65. Defendant's calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone line.

66. Defendant's calls harmed the Plaintiff by intruding upon Plaintiff's seclusion.

67. The Plaintiff has been harmed, injured, and damages by the calls including, but not limited to:

• Reduced Device Storage space and reduced data plan usage

13

- Invasion of privacy
- Reduced enjoyment and usage of his cell phone
- Reduced battery usage
- Anger and Frustration

## The Plaintiff's cell phone is a residential number

68. The calls were to the Plaintiff's cellular phone 915-383-4604, which is the Plaintiff's personal cell phone that he uses for personal, family, and household use. The Plaintiff maintains no landline phones at his residence and has not done so for at least 10 years and primarily relies on cellular phones to communicate with friends and family. The Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. The Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

## Violations of the Texas Business and Commerce Code 305.053

69. The actions of the defendants violated the Texas Business and Commerce Code 305.053 by placing automated calls to a cell phone which violate 47 USC 227(b). The calls by the defendants violated Texas law by placing calls with a pre-recorded message to a cell phone which violate 47 USC 227(c)(5) and 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e).

70. The calls by the defendants violated Texas law by spoofing the caller ID's per 47 USC 227(e) which in turn violates the Texas statute.

## Violations of the Texas Business and Commerce Code § 302.101

71.    The actions of the defendants violated the Texas Business and Commerce Code 302.101

by placing solicitation phone calls to a Texas resident without having registration certificate and bond on file with the Texas Secretary of State.

72.     Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code 302.303.

73.     The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

74.     Texas Business and Commerce Code §302.101 states that a person (1) "may not make a telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas]," (2) "unless the [person] holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a).

75.     Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101.

### FIRST CAUSE OF ACTION

### Willful and/or Knowing Violation of 47 U.S.C. § 227
### Telephone Consumer Protection Act of 1991
### (Against all Defendants)

76.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

77.     Defendants and/or their agents placed calls to Plaintiff's cellular telephone.

78.     Plaintiff never consented to receive calls from Defendants. Plaintiff has no relationship with Defendants.

79.     Defendants' calls were made for purposes of advertising and marketing Defendant Wide Merchant business funding services. These calls constituted commercial advertising and telemarketing as contemplated by the TCPA.

80.     The calls were made using an ATDS to the cellular phone of Plaintiff in violation of 47 U.S.C. § 227(b)(1)(A)(iii) and (B).

81.     As a result of their unlawful conduct, Defendants repeatedly invaded the personal privacy of Plaintiffs, causing Plaintiff to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling Plaintiff to recover $500 in statutory damages for each violation and an injunction requiring Defendants to stop their unlawful calling campaigns.

82.     Not only did Defendants make these violating calls, Defendants and/or their agents did so "knowingly" and/or "willfully' under 47 U.S.C. § 227 (b)(3)(C).

83.     If the Court finds that Defendants willfully or knowingly violated this subsection, the Court may exercise its discretion to increase the amount of the award from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

## SECOND CAUSE OF ACTION

### (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 C.F.R. § 64.1200(C))

### (Against All Defendants)

84.     Plaintiff incorporates the forgoing allegations as if fully set forth herein.

85.     The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute a violation of FCC regulations by making multiple telemarketing solicitations to a consumer on the National Do-Not-Call Registry within a 12-month period in violation of 47 C.F.R. § 64.1200(c)(2).

86.     Defendants called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

87.     Plaintiff was statutorily damaged at least forty-five (45) times under 47 U.S.C. § 227(c)(3)(F) by the Defendants by the telephone calls described above, in the amount of $500 per call.

88.     Plaintiff is entitled to an award of at least $500 in damages for each such violation.  47 U.S.C. § 227(c)(5)(B).

89.     Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

### THIRD CAUSE OF ACTION

**Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)**

**(Against All Defendants)**

90.     Plaintiff incorporates the forgoing allegations as if fully set forth herein.

91.     The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

       a.   written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1)[2];

       b.   training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2)[3]; and,

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).

> c.  in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

92.  Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

93.  Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

## FOURTH CAUSE OF ACTION
### Violations of The Texas Business and Commerce Code 305.053

94.  Plaintiff incorporates the foregoing allegations as if set forth herein.

95.  The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing robocalls to Mr. Callier cellular telephone number without his prior express written consent in violation of 47 USC 227 et seq. The Defendants violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

96.  Plaintiff is entitled to an award of at least $500 in damages for each such violation.

**Texas Business and Commerce Code 305.053(b)**

97.  Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053**(c)

## FIFTH CAUSE OF ACTION

---

[4] *See id.* at 425 (codifying a June 26, 2003 FCC order

### (Violations of The Texas Business and Commerce Code 302.101)

98.     Plaintiff incorporates the foregoing allegations as if set forth herein. by reference each and every allegation set forth in the preceding paragraphs.

99.     The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 302.101**, by making non-registered solicitation calls to Plaintiff's cellular telephone number without his prior express written consent.

100.    Plaintiff is entitled to an award of up to $5,000 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 302.302(a)**.

101.    Plaintiff is entitled to recover all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees.  **Texas Business and Commerce Code 302.302(d).**

### I. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brandon Callier prays for judgment against the defendants jointly and severally as follows:

A.      Leave to amend this Complaint to name additional DOESs as they are identified and to confirm to the evidence presented at trial;

B.      A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C.      An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.      An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation and individual for 45 calls.

E.     An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

F.     An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101.

G.     An award to Mr. Callier of damages, as allowed by law under the TCPA;

H.     An award to Mr. Callier of interest, costs and attorneys' fees, as allowed by law and equity

I.     Such further relief as the Court deems necessary, just, and proper.


Dated April 8, 2022,                              Respectfully Submitted,

                                                  Brandon Callier
                                                  Plaintiff, Pro Se
                                                  6336 Franklin Trail Drive
                                                  El Paso, TX 79912
                                                  915-383-4604