UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| BRANDON CALLIER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 3:22-cv-00123-FM |
| | ) |
| WIDE MERCHANT INVESTMENT, INC. | ) |
| a California corporation, and DAVID | ) |
| BOEM JOON KIM, SYNERGY | ) |
| FINANCIAL, EEC and JOHN DOES 1-4, | ) |
| | ) |
| Defendants. | |

**DEFENDANTS WIDE MERCHANT INVESTMENT, INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, OR IN THE ALTERNATIVE, FAILURE TO STATE A CLAIM**

Specially appearing Defendants Wide Merchant Investment, Inc. ("WMI") hereby move to dismiss Plaintiff's First Amended First Amended Complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. In the alternative, should the Court find that it may exercise personal jurisdiction over WMI, WMI moves to dismiss Plaintiff's First Amended First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to plausibly plead a claim for relief against Defendants.

**I.      INTRODUCTION**

Plaintiff Brandon Callier ("Plaintiff") has sued Defendant Wide Merchant Investment, Inc, ("WMI") on the basis that it is responsible for telemarketing calls made by a third party called Synergy Financial ("Synergy"), which Plaintiff alleges violated the Telephone Consumer Protection Act, and Texas Business and Commerce Code. Plaintiff cannot establish that this Court has personal jurisdiction over WMI in this case.

1

Plaintiff's allegations are not based upon WMI's residency in the State of Texas, or any acts Defendants directed to the State of Texas. Moreover, Plaintiff does not allege that WMI actually made any of the calls that form the basis of Plaintiff's claims. Instead, Plaintiff theorizes that WMI is vicariously liable for Synergy's alleged telemarketing calls because Synergy allegedly was acting as WMI's agent in making the calls. Plaintiff's theory of liability is based entirely upon sweeping, conclusory allegations, which are not entitled to be credited by the Court in determining whether Plaintiff has met his burden to establish personal jurisdiction. In addition, Plaintiff's conclusory allegations are directly contradicted by the Affidavit of WMI's CEO, David Kim, which establishes that WMI never contracted or authorized Synergy to make any calls on its behalf, and had no knowledge of the calls Plaintiff is alleging that Synergy made in violation of the law.

Lastly, even assuming Plaintiff could meet his burden to establish this Court's personal jurisdiction over WMI, which he cannot, Plaintiff's First Amended First Amended Complaint still fails to plausibly plead through non-conclusory allegations that WMI were vicariously liable for Synergy's alleged calls. Accordingly, the allegations of Plaintiff's First Amended First Amended Complaint are also insufficient to overcome dismissal under Federal Rules of Civil Procedure 12(b)(6).

For the reasons discussed below, this Court should grant WMI's motion, and dismiss Plaintiff's First Amended First Amended Complaint against WMI.

## II. SUMMARY OF FIRST AMENDED FIRST AMENDED COMPLAINT

Plaintiff alleges that he received unlawful telemarketing calls from Synergy for an unspecified "twelve-month period."[1] According to Plaintiff's First Amended First Amended Complaint, Plaintiff engaged the individual from Synergy who called him, and eventually

---

[1] First Amended First Amended Complaint, Dkt. 15 ("FAC"), ¶ 36.

submitted some kind of application to Synergy.[2] Plaintiff vaguely alleges that after he submitted this application, Synergy provided him with "a contract agreement to sign . . . that contained the information of Wide Merchant Group," which Plaintiff postulates "reveled the true identity of the company responsible for the illegal robocalls."[3] Later, when Plaintiff asked the Synergy representative who the solicitation was on behalf of, the representative replied "Wide Merchant."[4]

Plaintiff does not allege that WMI made any calls to Plaintiff, or that he ever interacted with anyone at WMI. Rather, Plaintiff claims that WMI is vicariously liability for Synergy's alleged violations of the law based upon a series of conclusory allegations, such as WMI "gave express authority and apparent authority to Synergy Financial with full knowledge the [sic] administration and solicitation of sales of the business funding services marketed as a result of the contract would be marketed using an automatic telephone dialing system ("ATDS")," and that WMI "ratified the conduct and behavior of Synergy Financial by repeatedly signing contracts to hire them[.]"[5]

Based upon these conclusory allegations, Plaintiff has alleged claims against WMI for violation of the Telephone Consumer Protection Act ("TCPA") and Texas Business and Commerce Code.[6]

### III. PROCEDURAL BACKGROUND

On April 8, 2022, Plaintiff filed his Complaint against Defendants alleging violations of the TCPA and Texas Business and Commerce Code.[7] On June 20, 2022, Defendants moved to

---

[2] FAC, ¶ 31.
[3] *Id.*
[4] FAC, ¶ 38.
[5] FAC, ¶¶ 61-62.
[6] FAC, ¶¶ 89-114.
[7] *See* First Amended Complaint, Dkt. 1.

dismiss for lack of jurisdiction or in the alternative, Plaintiff's failure to state a claim for relief.[8] On July 11, 2022, the last day Plaintiff could amend under the Federal Rules of Civil Procedure, Plaintiff filed his First Amended Complaint in an attempt to remedy the deficiencies noted in Defendants' motion to dismiss.[9] Plaintiff added Synergy as a defendant and attempted to add information to demonstrate that Synergy and WMI have a symbiotic working relationship.[10] However, as demonstrated in the Kim Affidavit, any new allegation regarding a purported relationship between Synergy and WMI is inaccurate and does not provide this Court with jurisdiction over WMI, or cure Plaintiff's deficient claims.

## IV.   DISCUSSION

### A.   Legal Standards Applicable to the Court's Exercise of Personal Jurisdiction

Federal courts may exercise jurisdiction over a nonresident defendant so long as state law confers such jurisdiction, and its exercise comports with due process under the Constitution.[11] "The Texas long-arm statute has been interpreted to extend the limits of due process."[12] Due process permits the exercise of jurisdiction over a nonresident defendant where the defendant has purposefully established "minimum contracts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."[13]

Under this standard, the minimum contacts of the nonresident defendant may establish either "general" or "specific" jurisdiction.[14] A Court has general personal jurisdiction over a nonresident defendant "when defendant's affiliations with the State are so continuous and

---

[8] *See* Motion to Dismiss, Dkt. 10.
[9] *See* FAC.
[10] *See, e.g.,* FAC ¶¶ 26-28, 36-38.
[11] *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1270 (5th Cir. 1983).
[12] *Jones v. Petty-Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1067-68 (5th Cir. 1992).
[13] *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).
[14] *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quotation marks and citation omitted); *Monkton Ins. Servs. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014).

systematic as to render [the defendant] essentially at home in the forum State."[15] Specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation."[16] The Fifth Circuit has articulated the following "three step analysis for the specific jurisdiction inquiry":

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.[17]

Plaintiff bears the burden of establishing a *prima facie* case of personal jurisdiction.[18] "If [the plaintiff] can successfully establish the first two prongs, then the burden shifts to [the defendant] to show that exercising jurisdiction would be unfair or unreasonable."[19] "The prima-facie-case requirement does not require the court to credit conclusory allegations, even if uncontroverted."[20] Moreover, the nonconclusory factual allegations in the First Amended Complaint are taken as true, except where they are contradicted by the defendant's affidavits.[21] If the defendant's affidavits directly contradict the plaintiff's jurisdictional allegations, the court "must determine whether the plaintiff[] ha[s] established a prima facie case of personal jurisdiction through nonconclusory allegations supported by admissible evidence."[22]

    **B.**    **Plaintiff Cannot Establish This Court's Personal Jurisdiction Over WMI**

        **1. WMI is Not at Home in Texas, so the Court Lacks General Personal Jurisdiction Over WMI**

In order for general personal jurisdiction to exist, WMI's "affiliations with the State [must

---

[15] *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014).
[16] *Monkton*, 768 F.3d at 432-33.
[17] *Id.* at 433.
[18] *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000).
[19] *Monkton*, 768 F.3d at 433.
[20] *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).
[21] *Wyatt v. Kaplan*, 686 F.2d 276, 282 n.13 (5th Cir. 1982).
[22] *Sealed Appellant 1 v. Sealed Appellee 1*, 625 F. App'x 628, 631 (5th Cir. 2015).

be] so 'continuous and systematic' as to render [it] essentially at home in [Texas]."[23] "[F]or a corporation, 'the place of incorporation and principal place of business' are where it is 'at home' and are thus paradigm bases for jurisdiction."[24] Accordingly, it is "incredibly difficult to establish general jurisdiction in a form other than the place of incorporation or principal place of business."[25]

Plaintiff alleges that "[t]his Court has general personal jurisdiction over the defendant because they have repeatedly placed phone calls to Texas residents, and derive revenue from Texas residents, and they sell goods and services to Texas residents, including the Plaintiff."[26] These allegations do not suffice to establish general jurisdiction because they are conclusory.[27] Even if they were not, these allegations are not sufficient to establish general personal jurisdiction over WMI, because they do not show that WMI is "essentially at home," in Texas. At best, they suggest that WMI conducted some business within the State, which is not enough to establish that the Court has general personal jurisdiction over WMI.[28]

Moreover, these allegations are contradicted by the Kim Affidavit. As set forth in the Affidavit, WMI is not a Texas corporation.[29] WMI is both incorporated and headquartered in the State of California.[30] WMI does not have any offices in Texas, and conducts its business almost entirely from the State of California.[31] While WMI may offer and sell certain financial products to businesses located in Texas, among several other states,[32] this limited commercial activity is not

---

[23] *Sangha v. Navig8 Shipmanagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018).
[24] *Monkton Ins. Servs. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014).
[25] *Id.*
[26] FAC., ¶ 7.
[27] *Panda Brandywine*, 253 F.3d at 869.
[28] *See e.g., Callier v. Sunpath, Ltd.*, No. EP-20-00106-FM, 2020 U.S. Dist. LEXIS 256792 at *5.
[29] Exhibit 1, Affidavit of David Boem Joon Kim ("Kim Aff.,"), ¶ 3.
[30] *Id*.
[31] *Id*. at ¶¶ 3-4.
[32] *Id*. at ¶ 4.

enough to establish that WMI is "essentially at home," in Texas.[33] Accordingly, Plaintiff cannot establish that this Court has general personal jurisdiction over WMI in this action.

### 2. WMI Did Not Direct Any Acts Into the State of Texas, so the Court Lacks Specific Personal Jurisdiction Over WMI

Plaintiff does not allege that WMI directly called Plaintiff, or took any other actions directed to the State of Texas such that specific personal jurisdiction over WMI would be proper. Instead, Plaintiff alleges through a string of conclusory allegations that WMI is vicariously liability for the calls Synergy made to Plaintiff.[34]

For purposes of establishing specific personal jurisdiction, "the actions of an agent may establish minimum contacts over a principal."[35] "Some courts have read the TCPA to strictly apply only to the entity making or initiating the call. Other courts have expanded the liability to include both the entity making the calls and the company who hired and directed the entity to make or initiate the calls."[36] Vicarious liability for TCPA violations is analyzed "under common law standards."[37]

Under those standards, vicarious liability may be established under theories of agency, apparent authority, and ratification.[38] Texas law provides that agency:

> [I]s the consensual relationship between two parties when one, the agent, acts on behalf of the other, the principal, and is subject to the principal's control. To prove agency, evidence must establish that the principal has both the right: (1) to assign the agent's task; and (2) to control the means and details of the process by which the agent will accomplish that task. It is the principal's extent of control over the

---

[33] See e.g., Callier, supra.
[34] FAC, ¶¶ 42-45; 59-62.
[35] McFadin v. Gerber, 587 F.3d 753, 761-62 (5th Cir. 2009).
[36] Franklin v. Upland Software, Inc., No. 1-18-CV-00236-LY, 2019 U.S. Dist. LEXIS 16938, at *6 (W.D. Tex. Feb. 1, 2019).
[37] Callier v. Multiplan, Inc., No. EP-20-CV-00318-FM, 2021 U.S. Dist. LEXIS 256747, at *33 (W.D. Tex. Aug. 26, 2021).
[38] Callier v. Sunpath, Ltd., No. EP-20-00106-FM, 2020 U.S. Dist. LEXIS 256792 at *7.

details of accomplishing the assigned task that primarily distinguishes the status of independent contractor from that of agent.[39]

Apparent authority exists where there is "some manifestation (whether an act or omission) of the principal that causes the third person to believe that the agent is authorized to act for him or the principal should realize that his conduct is likely to create such a belief."[40]

"Ratification may occur when a principal, though he had no knowledge originally of the unauthorized act of his agent, retains the benefits of the transaction after acquiring full knowledge . . . The critical factor in determining whether a principal has ratified an unauthorized act by his agent is the principal's knowledge of the transaction and his actions in light of such knowledge."[41]

Plaintiff cannot establish that WMI is vicariously liable for Synergy's alleged telephone calls under any of these theories. As a starting point, Plaintiff's allegations are all conclusory in nature, so they are not entitled to be credited by the Court when determining whether it may exercise specific personal jurisdiction over WMI. For example, Plaintiff's First Amended Complaint lacks any non-conclusory factual allegations that:

> (1) the defendant itself had any interaction with the plaintiff, (2) the entities were in fact acting at the directive of or on behalf of the defendant, (3) the plaintiff was transferred to the defendant during the telephone calls, (4) the defendant subsequently contacted the plaintiff in any manner as a result of the telephone calls, (5) any other allegations from which it could reasonably be inferred that the defendant was provided information about the plaintiff from the telemarketing calls, or the defendant was a de facto participant in the telephone calls.[42]

In addition, Plaintiff's conclusory allegations are contradicted by the Kim Affidavit. The Kim Affidavit establishes that Synergy was not WMI's agent. WMI did not contract with Synergy,

---

[39] *Indian Harbor Ins. Co. v. Valley Forge Ins. Grp.*, 535 F.3d 359, 364 (5th Cir. 2008) (internal citations and quotation marks omitted).
[40] *Cactus Pipe & Supply Co. v. M/V Montmartre*, 756 F.2d 1103, 1111 (5th Cir. 1985) (citing to Restatement (Second) of Agency § 27, cmt. a).
[41] *Land Title Co. v. F. M. Stigler, Inc.*, 609 S.W.2d 754, 756 (Tex. 1980).
[42] *Callier v. Nat'l United Grp., LLC*, No. EP-21-CV-71-DB, 2021 WL 5393829, at *6 (W.D. Tex. Nov. 17, 2021) (cleaned up; citations omitted).

was not aware of Synergy's calls, did not authorize the calls, and otherwise had no control over, or involvement with Synergy's alleged calls.[43] Indeed, the mere fact that a third party made telephone calls on a defendant's behalf is not, in and of itself, sufficient to establish an agency relationship. As this Court stated in another case involving Plaintiff, "[i]n order for an agency relationship to exist, [the defendant] must have had the authority to assign tasks and control the means and details of the process by which the third-party telemarketer responsible for calling Plaintiff in Texas conducts its business."[44] No such thing happened here.

The Kim Affidavit also establishes that Synergy did not have the apparent authority to act on behalf of WMI. Plaintiff does not point to any acts or omissions on the part of WMI that would have led Plaintiff to believe Synergy was WMI's authorized agent.[45] This is particularly true because WMI never had any direct interactions with Plaintiff.[46] Plaintiff must establish that WMI "acted to create the appearance of an agency relationship."[47] He has failed to do so.

Lastly, Plaintiff cannot establish vicarious liability under a theory of ratification. As set forth in the Kim Affidavit, WMI had no knowledge of Synergy's calls.[48] Indeed, until this lawsuit was filed, WMI had never received any First Amended Complaints relating to telephone solicitations made by any third parties, including Synergy, allegedly on WMI's behalf.[49] As this Court previously held in another case involving Plaintiff "[s]uch knowledge is necessary to meet the standard for ratification, which requires full knowledge of the underlying circumstances."[50]

---

[43] Ex. 1, Kim Aff., ¶¶ 9-15.
[44] *Callier v. Sunpath Ltd.*, No. EP-20-CV-00106-FM, 2020 U.S. Dist. LEXIS 256792, at *8 (W.D. Tex. Aug. 10, 2020).
[45] *See generally*, FAC.
[46] Ex. 1, Kim Aff., ¶¶ 7-8, 14.
[47] *Callier v. Sunpath*, *supra*.
[48] Ex. 1, Kim Aff., ¶¶ 9-15.
[49] *Id*.
[50] *Callier v. Sunpath*, *supra* at *9.

BN 71848173v4

No such knowledge exists on the part of WMI here.

For the reasons set forth above, Plaintiff's First Amended Complaint fails to establish that WMI may be held vicariously liable for Synergy's calls. As such, Plaintiff cannot meet his burden to make a *prima facie* showing that this Court may exercise specific personal jurisdiction over WMI. WMI simply had nothing to do with the calls alleged by Plaintiff, so there is no basis upon which this Court may exercise personal jurisdiction over WMI.

C. **Standards for a Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)**

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'"[51] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet the requirements of Rule 8.[52] "To survive a motion to dismiss, a First Amended Complaint must contain sufficient factual matter, accepted as true, to state a claim of relief that is plausible on its face."[53] Allegations consisting of "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," to overcome a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6).[54] "Where a First Amended Complaint pleads facts that are 'merely consistent with' a defendant's liability, [the First Amended Complaint] 'stops short of the line between possibility and plausibility of entitlement to relief.'"[55]

D. **Even Assuming the Court Could Exercise Personal Jurisdiction Over Defendants, Plaintiff Has Failed Plausibly Plead a Claim for Vicarious Liability Against Defendants**

For the same reasons discussed above, Plaintiff's allegations of vicarious liability against

---

[51] *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009).
[52] *Id*.
[53] *Iqbal*, 556 U.S. at 678 (quotation omitted).
[54] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).
[55] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

WMI are insufficient to overcome a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Plaintiff's claims against WMI boil down to the vague and uncertain allegation that after he submitted some kind of application to Synergy, Synergy provided him with "a contract agreement to sign . . . that contained the information of Wide Merchant Group," which Plaintiff claims "reveled the true identity of the company responsible for the illegal robocalls."[56] Then, when Plaintiff asked the Synergy representative who his solicitation was on behalf of, the representative replied "Wide Merchant."[57]

However, the alleged fact that Synergy provided Plaintiff with a document with the "information" of a company with a similarly-sounding name to WMI and the Synergy representative mentioned WMI does not in any way establish that Synergy was acting as WMI's agent in making telemarketing calls to Plaintiff. Indeed, Plaintiff's First Amended Complaint lacks any allegations that WMI ever interacted with him, or that Plaintiff was ever transferred to WMI during a call with Synergy—factual allegations which courts within this district have looked at for vicarious liability for a third party's alleged TCPA violations.[58]

Plaintiff's claim for vicarious liability is otherwise made up entirely of formulaic and conclusory allegations,[59] which are not sufficient to overcome a motion to dismiss.[60] Accordingly,

---

[56] FAC, ¶ 28.
[57] FAC, ¶ 37.
[58] *Callier v. Nat'l United Grp., LLC*, No. EP-21-CV-71-DB, 2021 WL 5393829, at *6 (W.D. Tex. Nov. 17, 2021).
[59] FAC, ¶¶ 62-63.
[60] *See, e.g., Callier v. Nat'l United Grp., LLC*, No. EP-21-CV-71-DB, 2021 WL 5393829, at *6 (W.D. Tex. Nov. 17, 2021) (discussing cases in which conclusory allegations of vicarious liability were insufficient to overcome a motion to dismiss); *Cunningham v. Lifestyles Dev., LLC*, No. 419CV00006ALMCAN, 2019 WL 4282039, at *4 (E.D. Tex. Aug. 8, 2019*), report and recommendation adopted*, No. 4:19-CV-00006, 2019 WL 4277507 (E.D. Tex. Sept. 10, 2019) (rejecting conclusory allegations of vicarious liability made by the plaintiff).

even assuming this Court had personal jurisdiction over WMI, Plaintiff's claims against WMI would still be subject to dismissal under Rule 12(b)(6).

        **1.     Even Assuming the Defendants Were Vicariously Liable for Synergy's Actions, Plaintiff Has Failed to Accurately Plead a TCPA Claim**

Even if this Court determines that WMI can be held vicariously liable for Synergy's actions, Plaintiff has failed to plead a cognizable TCPA claim against Defendants. The TCPA makes it unlawful for persons "to make any [unconsented] call using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service."[61] An automatic telephone dialing system ("ATDS") for purposes of the TCPA is defined as "equipment that has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."[62]

In *Camunas v. National Republican Senatorial Committee*, the court explained that bare allegations that defendant placed calls using automated dialing technology were insufficient to trigger the TCPA and instead plaintiff must provide details about the contents of the calls, the absence of a relationship between the parties, and the random nature of the automation device used to make the calls before it can plausibly allege a TCPA violation.[63]

Similarly, in *Barnett v. Bank of America*, the court held that the plaintiff's TCPA claim failed because the plaintiff's allegations of the defendant's use of ATDS in placing the calls failed

---

[61] 47 U.S.C. § 227(b)(1)(A)(iii). Here, it is likely that Synergy made such calls with Plaintiff's consent. Plaintiff admits that he "applied and submitted a Docusign to Synergy." FAC, ¶ 31. It is likely that Plaintiff listed his personal phone number on the application, which would provide Defendants his consent for telephone calls and communications. *See Cherkaoui v. Santander Consumer USA, Inc.,* 32 F. Supp. 3d 811 (S.D. Tex. 2014) (The plaintiff putting his "telephone number on the credit application that he completed in connection with the retail installment sales contract executed in purchasing an automobile constituted his prior express consent to be contacted on that cell phone using an automated telephone dialing system.").
[62] 47 U.S.C. § 227(a)(1).
[63] *Camunas v. Nat'l Republican Senatorial Comm.*, 541 F. Supp. 3d 595, 602-03 (E.D. Pa. 2021).

to negate that the number chosen for the calls were selected from a pre-existing list based on criteria from the dialer administrators rather than by random or sequential number generators.[64]

Thus, to survive a motion to dismiss for failure to state a claim, plaintiffs must plausibly allege the content of the messages and the random nature of the automation device used to make the calls as well as expressly affirm the absence of a pre-existing relationship with defendants.[65] Plaintiff's allegations, however, are remarkably devoid of these prerequisites. Plaintiff does not allege that Synergy's telephone system had the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers. Similarly, Plaintiff does not allege that calls he received were from an artificial or prerecorded voice. Instead, Plaintiff alleges that he spoke to a specific representative from Synergy, namely Aaron Cruz.[66] Thus, because there are no facts in the record that indicate that Synergy utilized an automatic telephone dialing system or an artificial or prerecorded voice to call Plaintiff, his TCPA claim fails and must be dismissed.[67]

### 2. Plaintiff Failed To Adequately Plead a Violation of Texas Business and Commercial Code Section 304.053.

Texas Business and Commerce Code section 305.053 ("Section 305.053") creates a right

---

[64] *Barnett v. Bank of Am.*, N.A., 3:20-cv-272-RJC-DSC, 2021 U.S. Dist. LEXIS 101171, at *9 (W.D. N.C. May 28, 2021).
[65] *See, e.g., Camunas*, 541 F. Supp. 3d at 602-03 (explaining that bare allegations that defendant placed calls using automated dialing technology is insufficient to trigger the TCPA; plaintiff must provide some details of the contents of the calls, the absence of a relationship between the parties, and the random nature of the automation device used to make the calls before it can plausible allege a TCPA violation); *Barnett*, 2021 U.S. Dist. LEXIS 101171, at *9 (TCPA claim failed because the number chosen for the calls were selected from a pre-existing list created based on criteria from the dialer administrators rather than by random or sequential number generators).
[66] FAC, ¶ 33-38.
[67] *See Garcia v. Rauch-Milliken Int'l, Inc.*, No. 5-18-CV-01028-FB-RBF, 2020 WL 3579201, at *5 (W.D. Tex., Feb. 14, 2020), *report and recommendation adopted* (W.D. Tex., Mar. 4, 2020, No. CV SA-18-CA-1028-FB) 2020 WL 3579822 ("Because there is no evidence in the record suggesting that Rauch Milliken's telephone system had the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers, summary judgment on Garcia's TCPA claim should be granted in Rauch-Milliken's favor.").

of action for "a person who receives a communication that violates [the TCPA] [or] a regulation adopted under that provision . . . against the person who originates the communication . . . ."[68] Therefore, the elements of a Section 305.053 claim "correspond to the necessary elements for a TCPA claim."[69] Where a plaintiff's underlying TCPA claims are not are cognizable, a plaintiff's Section 305.053 are not cognizable as well.[70]

Here, Plaintiff has failed to demonstrate critical elements of a TCPA claim, namely that Synergy's telephone system had the capacity to store or produce telephone numbers and call randomly or sequentially. Similarly, Plaintiff does not allege that calls he received were from an artificial or prerecorded voice. Thus, Plaintiff has failed to allege a violation of the TCPA as well as Section 305.053.

### 3. Plaintiff Has Failed to Plead a Texas Business and Commerce Code Section 302.101 Claim.

Texas Business and Commerce Code section 302.101 ("Section 302.101") states that a person "may not make a telephone solicitation" "from a location in [Texas]" or "to a purchaser located in [Texas]," (2) "unless the [person] holds a registration certificate for the business location from which the telephone solicitation is made."

---

[68] Tex. Bus. & Com. Code § 305.053(a).
[69] *Callier v. GreenSky, Inc.*, No. EP-20-CV-00304-KC, 2021 WL 2688622, at *6 (W.D. Tex. May 10, 2021).
[70] *Cherkaoui v. Santander Consumer USA, Inc.*, 32 F.Supp.3d 811, 815 (S.D. Tex. 2014) ("As Santander did not violate the TCPA, Santander also did not violate related Texas state law claims arising under the Texas Business and Commercial Code § 305.053 ("Texas TCPA"). The Texas TCPA proscribes only that conduct which is also prohibited by the TCPA. If no violation of the TCPA exists, there is no violation of the Texas TCPA."); *Hunsinger v. Buyers*, No. 3:21-cv-1598-D, 2022 U.S. Dist. LEXIS 32319, at *18 (N.D. Tex. Feb. 24, 2022); *Cunningham v. Creative Edge Mktg*. LLC, No. 4:19-cv-00669-ALM-CAN, 2021 U.S. Dist. LEXIS 126863, at *11-12 (E.D. Tex. June 16, 2021) (explaining that if there is no violation under 47 C.F.R. section 227, then there can be no violation of Texas Business & Commerce Code section 305.053).

Here, it is undisputed that Kim nor WMI ever called Plaintiff, a Texas resident. Thus, Defendants did not make a solicitation to Plaintiff and his Section 302.101 claim must be dismissed.

## V. **CONCLUSION**

For the reasons set forth above, WMI respectfully requests that the Court grant its motion to dismiss.

DATED: July 25, 2022

        Respectfully submitted,

        AINSA HUTSON HESTER & CREWS LLP
        5809 Acacia Circle
        El Paso, Texas 79912
        Tel:   (915) 845-5300
        Fax:  (915) 845-7800
        By: /s/ *Chantel Crews*
             Chantel Crews
             State Bar No. 24007050
             *ccrews@acaciapark.com*

        **AND**

        BUCHALTER
        A Professional Corporation
        *abetpera@buchalter.com*
        18400 Von Karman Ave., Ste. 800
        Irvine, California  92612-0514
        Tel:   (949) 224-6422
        Fax:  (949) 720-0182


        By:      /s/ *Artin Betpera*
              ARTIN BETPERA
          (*Pro Hac Vice* Application Pending)
        Attorneys for Defendants WIDE MERCHANT
          INVESTMENT, INC., and DAVID BOEM
                  JOON KIM

## CERTIFICATE OF SERVICE

      This is to certify that on July 25, 2022, a true and correct copy of the following instrument was served upon all parties and/or counsel of record pursuant to the Federal Rules of Civil Procedure as reflected below:

| | |
|---|---|
| Brandon Callier<br>6336 Franklin Trail Drive<br>El Paso, Texas 79912<br>E-mail: Callier74@gmail.com<br>*Pro Se Plaintiff* | *Via Electronic Mail* |

      By: /s/ *Chantel Crews*
          Chantel Crews
        *Attorneys for Defendants*