UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| BRANDON CALLIER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:22-cv-00123-FM |
| | ) | |
| WIDE MERCHANT INVESTMENT, INC. | ) | |
| a California corporation, and DAVID | ) | |
| BOEM JOON KIM, SYNERGY | ) | |
| FINANCIAL, EEC and JOHN DOES 1-4, | ) | |
| | ) | |
| Defendants. | | |

**DEFENDANTS WIDE MERCHANT INVESTMENT, INC.'S MOTION TO DISMISS
SECOND AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION, OR
IN THE ALTERNATIVE, FAILURE TO STATE A CLAIM**

Specially appearing Defendant Wide Merchant Investment, Inc. ("WMI") hereby moves to dismiss Plaintiff's Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. In the alternative, should the Court find that it may exercise personal jurisdiction over WMI, WMI moves to dismiss Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to plausibly plead a claim for relief against WMI.

I.    **INTRODUCTION**

Plaintiff Brandon Callier ("Plaintiff") has sued Defendant Wide Merchant Investment, Inc, ("WMI") on the basis that it is responsible for telemarketing calls made by a third party called Defendant Synergy Financial ("Synergy"), which Plaintiff alleges violated the Telephone Consumer Protection Act, and Texas Business and Commerce Code. Plaintiff is now on the third iteration of his complaint, and despite his repeated amendments, Plaintiff still cannot establish that this Court has personal jurisdiction over WMI in this case.

Plaintiff's allegations are not based upon WMI's residency in the State of Texas, or any

acts WMI directed to the State of Texas. Moreover, Plaintiff does not allege that WMI actually made any of the calls that form the basis of Plaintiff's claims. Instead, Plaintiff theorizes that WMI is vicariously liable for Synergy's alleged telemarketing calls because Synergy primarily was acting as WMI's agent in making the calls. Plaintiff's theory of liability is based entirely upon sweeping, conclusory allegations, which are not entitled to be credited by the Court in determining whether Plaintiff has met his burden to establish personal jurisdiction.

To the extent that Plaintiff makes any non-conclusory allegations, they are as follows: (1) that he received a contract from WMI after he spoke with, and submitted an application to Synergy; and (2) Synergy stated that WMI was its "subsidiary." However, neither allegation is sufficient to support a finding of vicarious liability for jurisdictional purpose, and both are directly contradicted by the affidavit of WMI's CEO, David Kim, which establishes that WMI never contracted or authorized Synergy to make any calls on its behalf, and had no knowledge of, control over, or involvement in the calls Plaintiff is alleging that Synergy made in violation of the law.

Lastly, even assuming Plaintiff could meet his burden to establish this Court's personal jurisdiction over WMI, which he cannot, Plaintiff's complaint still fails to plausibly plead any claims against WMI. Accordingly, the allegations of Plaintiff's complaint are also insufficient to overcome dismissal under Federal Rules of Civil Procedure 12(b)(6).

For the reasons discussed below, this Court should grant WMI's motion, and dismiss Plaintiff's complaint against WMI.

## II.   <u>SUMMARY OF COMPLAINT</u>

Plaintiff alleges that he received unlawful telemarketing calls from Synergy between October 2021 and August 2022.[1] According to Plaintiff's complaint, Plaintiff engaged the

---

[1] Second Amended Complaint, Dkt. 30 ("SAC"), ¶ 92.

individual from Synergy who called him, and eventually submitted some kind of application to Synergy under false pretenses to "identify[] the United States-based company on whose behalf Synergy was placing the phone calls."[2] Plaintiff alleges that after he submitted this false application, "Plaintiff received a contract for $40,000 directly from WMI via an email from info@widemerchant.com."[3] Plaintiff alleges that during a phone call he had with Synergy on March 18, 2022, Synergy stated that WMI was "one of our subsidiary companies."[4]

Plaintiff does not allege that WMI made any calls to Plaintiff, or that he in any way interacted with anyone at WMI. Rather, Plaintiff claims that WMI is vicariously liability for Synergy's alleged violations of the law based upon a series of conclusory allegations, such as "Synergy calls potential borrowers at the direction of WMI,"[5] "WMI directly participates in the calling campaign,"[6] "Synergy acts as an authorized agent of Defendant Wide Merchant,"[7] and "Defendants Wide Marchant and Kim gave express authority and apparent authority to Synergy Financial with full knowledge the administration of sales and solicitation of sales would be conducted via TCPA violating phone calls."[8]

Based upon these allegations, Plaintiff has alleged claims against WMI for violation of the Telephone Consumer Protection Act ("TCPA") and Texas Business and Commerce Code.[9]

### III.   PROCEDURAL BACKGROUND

On April 8, 2022, Plaintiff filed his Complaint against Defendants alleging violations of the TCPA and Texas Business and Commerce Code.[10] On June 20, 2022, Defendants WMI and

---

[2] SAC, ¶ 35.
[3] SAC, ¶ 36, Ex. A.
[4] SAC, ¶ 37.
[5] SAC, ¶ 56.
[6] SAC, ¶ 65.
[7] SAC, ¶ 86.
[8] SAC, ¶ 104.
[9] SAC, ¶¶ 150-175.
[10] *See* Complaint, Dkt. 1.

BN 73767832v2

Kim moved to dismiss for lack of jurisdiction or in the alternative, Plaintiff's failure to state a claim for relief.[11] On July 11, 2022, the last day Plaintiff could amend under the Federal Rules of Civil Procedure, Plaintiff filed his First Amended Complaint to avoid responding to Defendants' motion to dismiss.[12]

In response to Plaintiff's First Amended Complaint, WMI and Kim filed another motion to dismiss on July 25, 2022.[13] Plaintiff opposed WMI's motion, but did not oppose the motion filed by Kim.[14] On September 1, 2022, Plaintiff filed a motion for leave to amend his complaint.[15] On November 10, 2022, the Court granted Plaintiff's motion for leave to file his operative Second Amended Complaint.[16]

Plaintiff has now had three different opportunities to plead his claims against WMI and Kim. However, as demonstrated in the Kim affidavit, Plaintiffs' allegations regarding a purported relationship between Synergy and WMI are inaccurate, do not provide this Court with jurisdiction over WMI, and do not cure Plaintiff's deficient claims.

## IV.   <u>DISCUSSION</u>

### A.   <u>Legal Standards Applicable to the Court's Exercise of Personal Jurisdiction</u>

Federal courts may exercise jurisdiction over a nonresident defendant so long as state law confers such jurisdiction, and its exercise comports with due process under the Constitution.[17] "The Texas long-arm statute has been interpreted to extend the limits of due process."[18] Due process permits the exercise of jurisdiction over a nonresident defendant where the defendant has

---

[11] *See* Motion to Dismiss, Dkt. 10.
[12] *See* SAC.
[13] Dkt. 17.
[14] Dkt. 23, 25.
[15] Dkt. 27.
[16] Dkt. 29.
[17] *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1270 (5th Cir. 1983).
[18] *Jones v. Petty-Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1067-68 (5th Cir. 1992).

purposefully established "minimum contracts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."[19]

Under this standard, the minimum contacts of the nonresident defendant may establish either "general" or "specific" jurisdiction.[20] A Court has general personal jurisdiction over a nonresident defendant "when defendant's affiliations with the State are so continuous and systematic as to render [the defendant] essentially at home in the forum State."[21] Specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation."[22] The Fifth Circuit has articulated the following "three step analysis for the specific jurisdiction inquiry":

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.[23]

Plaintiff bears the burden of establishing a *prima facie* case of personal jurisdiction.[24] "If [the plaintiff] can successfully establish the first two prongs, then the burden shifts to [the defendant] to show that exercising jurisdiction would be unfair or unreasonable."[25] "The prima-facie-case requirement does not require the court to credit conclusory allegations, even if uncontroverted."[26] Moreover, the nonconclusory factual allegations in the complaint are taken as true, except where they are contradicted by the defendant's affidavits.[27] If the defendant's affidavits directly contradict the plaintiff's jurisdictional allegations, the court "must determine

---

[19] *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).
[20] *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quotation marks and citation omitted); *Monkton Ins. Servs. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014).
[21] *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014).
[22] *Monkton*, 768 F.3d at 432-33.
[23] *Id*. at 433.
[24] *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000).
[25] *Monkton*, 768 F.3d at 433.
[26] *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).
[27] *Wyatt v. Kaplan*, 686 F.2d 276, 282 n.13 (5th Cir. 1982).

BN 73767832v2

whether the plaintiff[] ha[s] established a prima facie case of personal jurisdiction through nonconclusory allegations supported by admissible evidence."[28]

**B.**    **Plaintiff Cannot Establish This Court's Personal Jurisdiction Over WMI**

    **1.**    **WMI is Not at Home in Texas, so the Court Lacks General Personal Jurisdiction Over WMI**

In order for general personal jurisdiction to exist, WMI's "affiliations with the State [must be] so 'continuous and systematic' as to render [it] essentially at home in [Texas]."[29] "[F]or a corporation, 'the place of incorporation and principal place of business' are where it is 'at home' and are thus paradigm bases for jurisdiction."[30] Accordingly, it is "incredibly difficult to establish general jurisdiction in a form other than the place of incorporation or principal place of business."[31]

Plaintiff alleges that "[t]his Court has general personal jurisdiction over the defendant because they have repeatedly placed phone calls to Texas residents, and derive revenue from Texas residents, and they sell goods and services to Texas residents, including the Plaintiff."[32] Plaintiff also alleges that WMI is subject to general jurisdiction in Texas because it has "filed at least 68 Complaints in Harris County, Texas, and has affirmatively chosen the state of Texas as the vehicle for the enforcement of their garnishment activities."[33]

These allegations do not suffice to establish general jurisdiction because they are conclusory.[34] Even if they were not, these allegations are not sufficient to establish general personal jurisdiction over WMI, because they do not show that WMI is "essentially at home," in Texas. At best, they suggest that WMI conducted some business within the State, which is not

---

[28] *Sealed Appellant 1 v. Sealed Appellee 1*, 625 F. App'x 628,631 (5th Cir. 2015).
[29] *Sangha v. Navig8 Shipmanagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018).
[30] *Monkton Ins. Servs. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014).
[31] *Id.*
[32] SAC., ¶ 7.
[33] *Id*.
[34] *Panda Brandywine*, 253 F.3d at 869.

BN 73767832v2

enough to establish that the Court has general personal jurisdiction over WMI.[35] Indeed, even assuming WMI "conducted a great deal of business **with** Texas," it has conducted "none **in** Texas," so "general jurisdiction cannot be shown, even on a prima facie basis."[36]

Moreover, the Kim affidavit establishes that Plaintiff cannot meet either one of the two paradigm bases for general jurisdiction. As set forth in the affidavit, WMI is not a Texas corporation.[37] WMI is both incorporated and headquartered in the State of California.[38] WMI does not have any offices in Texas, and conducts its business almost entirely from the State of California.[39] While WMI may offer and sell certain financial products to businesses located in Texas, among several other states,[40] this limited commercial activity is not enough to establish that WMI is "essentially at home," in Texas.[41] Accordingly, Plaintiff cannot establish that this Court has general personal jurisdiction over WMI in this action.

### 2. WMI Did Not Direct Any Acts Into the State of Texas, so the Court Lacks Specific Personal Jurisdiction Over WMI

Plaintiff does not allege that WMI directly called Plaintiff, or took any other actions directed to the State of Texas such that specific personal jurisdiction over WMI would be proper. Instead, Plaintiff alleges that WMI is vicariously liability for the calls Synergy made to Plaintiff.[42]

For purposes of establishing specific personal jurisdiction, "the actions of an agent may establish minimum contacts over a principal."[43] "Some courts have read the TCPA to strictly apply

---

[35] *See e.g., Callier v. Sunpath, Ltd.*, No. EP-20-00106-FM, 2020 U.S. Dist. LEXIS 256792 at *5.
[36] *Access Telecom, Inc. v. MCI Telecommunications Corp.*, 197 F.3d 694, 718 (5th Cir. 1999) (emphasis added); see also *Evergreen Media Holdings, LLC v. Safran Co.*, 68 F. Supp. 3d 664, 674 (S.D. Tex. 2014) ("An out-of-state defendant that merely does business with Texas businesses or customers will not be subject to general jurisdiction if it does not have a lasting physical presence in the state.")
[37] Exhibit 1, Affidavit of David Boem Joon Kim ("Kim Aff.,"), ¶ 3.
[38] *Id*.
[39] *Id*. at ¶¶ 3-4.
[40] *Id*. at ¶ 4.
[41] *See e.g., Callier, supra*.
[42] SAC ¶¶ 102-121.
[43] *McFadin v. Gerber*, 587 F.3d 753, 761-62 (5th Cir. 2009).

only to the entity making or initiating the call. Other courts have expanded the liability to include both the entity making the calls and the company who hired and directed the entity to make or initiate the calls."[44] Vicarious liability for TCPA violations is analyzed "under common law standards."[45]

Under those standards, vicarious liability may be established under theories of agency, apparent authority, and ratification.[46] Texas law provides that agency:

> [I]s the consensual relationship between two parties when one, the agent, acts on behalf of the other, the principal, and is subject to the principal's control. To prove agency, evidence must establish that the principal has both the right: (1) to assign the agent's task; and (2) to control the means and details of the process by which the agent will accomplish that task. It is the principal's extent of control over the details of accomplishing the assigned task that primarily distinguishes the status of independent contractor from that of agent.[47]

Apparent authority exists where there is "some manifestation (whether an act or omission) of the principal that causes the third person to believe that the agent is authorized to act for him or the principal should realize that his conduct is likely to create such a belief."[48]

"Ratification may occur when a principal, though he had no knowledge originally of the unauthorized act of his agent, retains the benefits of the transaction after acquiring full knowledge . . . The critical factor in determining whether a principal has ratified an unauthorized act by his agent is the principal's knowledge of the transaction and his actions in light of such knowledge."[49]

Plaintiff cannot establish that WMI is vicariously liable for Synergy's alleged telephone

---

[44] *Franklin v. Upland Software, Inc.*, No. 1-18-CV-00236-LY, 2019 U.S. Dist. LEXIS 16938, at *6 (W.D. Tex. Feb. 1, 2019).

[45] *Callier v. Multiplan, Inc.*, No. EP-20-CV-00318-FM, 2021 U.S. Dist. LEXIS 256747, at *33 (W.D. Tex. Aug. 26, 2021).

[46] *Callier v. Sunpath, Ltd.*, No. EP-20-00106-FM, 2020 U.S. Dist. LEXIS 256792 at *7.

[47] *Indian Harbor Ins. Co. v. Valley Forge Ins. Grp.*, 535 F.3d 359, 364 (5th Cir. 2008) (internal citations and quotation marks omitted).

[48] *Cactus Pipe & Supply Co. v. M/V Montmartre*, 756 F.2d 1103, 1111 (5th Cir. 1985) (citing to Restatement (Second) of Agency § 27, cmt. a).

[49] *Land Title Co. v. F. M. Stigler, Inc.*, 609 S.W.2d 754, 756 (Tex. 1980).

calls under any of these theories. As a starting point, Plaintiff's allegations are mostly conclusory, so they are not entitled to be credited by the Court when determining whether it may exercise specific personal jurisdiction over WMI. In addition, Plaintiff's conclusory allegations are contradicted by the Kim affidavit.

Initially, the Kim affidavit establishes that there is no direct contractual relationship between WMI and Synergy. Instead, according to WMI's records, there exists an Independent Agent Marketing and Referral Agreement (the "Independent Marketing Agreement") between Blue Coast Service Inc. (an entity which is affiliated with WMI), and an entity called Synergy BPO, LLC ("Synergy BPO").[50] "Thus, Plaintiff cannot plausibly claim that [WMI] maintains an agency relationship with [Synergy] based upon [any] actual authority vested in an agreement to which they are not parties."[51]

Even putting that aside, the Independent Marketing Agreement only authorized Synergy BPO to "promote [BCS'] product and refer merchants."[52] However, the Agreement does not contain any provisions specifying the manner and means by which Synergy would promote any products, or refer any merchants.[53] Nor does it contain any provisions vesting any measure of control over the manner or means by which Synergy would promote any products, or refer any merchants.[54] Moreover, Synergy BPO was prohibited under the agreement from representing "that he/she is an employee of BCS," or using BCS's logo, trademark, or trade name.[55]

Simply put, neither WMI nor its affiliated entity BCS had the right to control the marketing activities of Synergy, and in fact were not involved with, did not participate in, and had no

---

[50] Kim Aff., ¶¶6-7, Exhibit A.
[51] *Shanahan v. Nat'l Auto Prot. Corp.*, No. 1:19-CV-03788, 2020 WL 3058088, at *4 (N.D. Ill. June 9, 2020).
[52] Kim Aff., Exhibit A, p. 1.
[53] See *id*. at Exhibit A, generally.
[54] *Id*.
[55] *Id*. at Exhibit A, ¶¶ III(b)-(c).

9

knowledge of any of Synergy's alleged telemarketing activities.[56] Moreover, when allegations of those alleged activities came to light, BCS made the decision to terminate the Independent Marketing Agreement with Synergy BPO after Synergy apparently failed to honor Plaintiff's request to no longer receive calls.[57] This evidence precludes a finding that Synergy was acting as WMI's agent in allegedly calling Plaintiff.

"It is the principal's extent of control over the details of accomplishing the assigned task that primarily distinguishes the status of independent contractor from that of agent."[58] Importantly, the "control must relate to the activity that actually caused the injury," and must be to an extent that "the contractor cannot perform the work as it chooses."[59] As this Court stated in another case involving Plaintiff, "[i]n order for an agency relationship to exist, [the defendant] must have had the authority to assign tasks and control the means and details of the process by which the third-party telemarketer responsible for calling Plaintiff in Texas conducts its business."[60]

Here, the evidence presented by WMI in this motion establishes that WMI had no knowledge of, let alone any measure of control over any alleged telemarketing activities of Synergy.[61] The Independent Agent Agreement did not give WMI the right to control any aspect of Synergy's business operations, and WMI in fact exercised absolutely no control over those operations.[62] In addition, neither WMI nor its affiliate BCS "instructed Synergy on when and which states to solicit via telephone calls or the minimum requirements to obtain a merchant cash advance through WMI."[63] Nor did either of these entities "provide[] Synergy with any marketing

---

[56] *Id.* at ¶¶ 9, 14-15, 21-22, 25.

[57] *Id.* at ¶ 27.

[58] *Indian Harbor Ins. Co. v. Valley Forge Ins. Grp.*, 535 F.3d 359, 364 (5th Cir. 2008)

[59] *Id.* at 364-65.

[60] *Callier v. Sunpath Ltd.*, No. EP-20-CV-00106-FM, 2020 U.S. Dist. LEXIS 256792, at *8 (W.D. Tex. Aug. 10, 2020).

[61] Kim Aff., ¶¶ 9, 14-15, 21-22, 25.

[62] *Id.* at Exhibit A; ¶¶ 9, 14-15, 21-22, 25.

[63] *Id.* at ¶ 22.

BN 73767832v2

guidelines, scripts, or similar documents."[64] At best, WMI had an indirect business relationship with Synergy. But the mere existence of an indirect business relationship "still does not allow the court to infer that defendant exercises control over the representatives."[65] The key is control, and Plaintiff cannot present any evidence that WMI or its affiliate BCS exercised any manner of control over the alleged telemarketing operations of Synergy.

Plaintiff's SAC also contains a slew of speculative allegations about some kind of "funding call" that never actually happened.[66] According to Plaintiff, this "funding call" (that never actually happened) entails a three-way call between Synergy, WMI, and the merchant during which WMI verifies the merchant's bank accounts. Plaintiff appears to theorize that WMI's alleged control over this process somehow supports the existence of an agency relationship between WMI and Synergy. This entire string of speculative allegations, however, is nothing but a red herring because those allegations do not "relate to the activity that actually caused the injury."[67] In this case, that activity was telephone calls, not some kind of bank account verification procedure.

The evidence presented by WMI is analogous to the evidence presented by the defendant in *Horton v. Sunpath*, a TCPA case from the Northern District of Texas in which the court found that it lacked specific personal jurisdiction over the defendant.[68] In *Horton*, the plaintiff had similarly theorized that the defendant was subject to personal jurisdiction based upon the activities of alleged third party telemarketers alleged to be defendant's agent. The defendant submitted a declaration stating that it had "no role or involvement in the third-party telemarketing companies'

---

[64] *Id.*

[65] *Abante Rooter & Plumbing v. Farmers Grp., Inc.*, 2018 WL 288055, *5 (N.D. Cal. 2018) ("[T]he court can infer that there is some relationship between the purported representatives and defendant. But that inference is not enough because it still does not allow the court to infer that defendant exercises control over the representatives.")

[66] SAC, ¶¶ 46-56.

[67] *Indian Harbor*, 535 F.3d at 364.

[68] *Horton v. SunPath, Ltd.*, No. 3:20-CV-1884-B-BH, 2021 WL 982344, at *4 (N.D. Tex. Feb. 16, 2021), report and recommendation adopted, No. 3:20-CV-1884-B-BH, 2021 WL 977065 (N.D. Tex. Mar. 15, 2021).

selection of who to market to, or the manner in which they conduct their marketing operations."[69] The court held that, without any contradictory evidence showing that the defendant "had the authority to assign tasks and control the means and details of the process by which the third-party company responsible for calling Plaintiff in Texas conducts its business," the plaintiff had "failed to make a *prima facie* showing of specific jurisdiction against Defendant."[70]

In addition, the Kim affidavit establishes that Synergy did not have the apparent authority to act on behalf of WMI. Indeed, the terms of the Independent Agent Agreement expressly prohibited Synergy from holding itself out as an employee of WMI's affiliate BCS (let alone WMI itself), and from using BCS's trade name (let alone WMI's).[71] Plaintiff does not point to any acts or omissions on the part of WMI that would have led Plaintiff to believe Synergy was WMI's authorized agent.[72] This is particularly true because WMI never had any direct interactions with Plaintiff.[73] Plaintiff must establish that WMI "acted to create the appearance of an agency relationship."[74] He cannot to do so.

Lastly, Plaintiff cannot establish vicarious liability under a theory of ratification. As set forth in the Kim affidavit, WMI had no knowledge of Synergy's calls.[75] Indeed, until this lawsuit was filed, WMI had never received any complaints relating to telephone solicitations made by any third parties, including Synergy, allegedly on WMI's behalf.[76] As this Court previously held in another case involving Plaintiff "[s]uch knowledge is necessary to meet the standard for ratification, which requires full knowledge of the underlying circumstances."[77] No such

---

[69] *Id.*
[70] *Id.*
[71] Kim Aff., Exhibit A, ¶ III(b)-(c).
[72] *See generally*, SAC.
[73] Kim Aff., ¶¶ 6-7, 13.
[74] *Callier v. Sunpath*, *supra*.
[75] Kim Aff., ¶¶ 14, 25-26.
[76] *Id.*
[77] *Callier v. Sunpath*, *supra* at *9.

BN 73767832v2

knowledge exists on the part of WMI here.

In addition, Plaintiff cannot demonstrate that WMI accepted any benefits that resulted from any of the calls allegedly made to Plaintiff by Synergy. At best, the allegations of Plaintiffs complaint, and the evidence presented by WMI establish that Plaintiff submitted an application to Synergy under false pretenses, which was later forwarded to WMI.[78] However, no benefits resulted from those calls because Plaintiff never entered into any transaction with WMI. Lastly, after Plaintiff alleged that Synergy continued to call him after this lawsuit was filed, WMI's affiliate BCS made the decision to terminate its contractual relationship with Synergy.[79]

For the reasons set forth above, Plaintiff's complaint fails to establish that WMI may be held vicariously liable for Synergy's calls. As such, Plaintiff cannot meet his burden to make a *prima facie* showing that this Court may exercise specific personal jurisdiction over WMI. WMI simply had nothing to do with the calls alleged by Plaintiff, so there is no basis upon which this Court may exercise personal jurisdiction over WMI.

### C. Standards for a Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'"[80] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet the requirements of Rule 8.[81] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim of relief that is plausible on its face."[82] Allegations consisting of "labels and conclusions, and a formulaic recitation of the elements of a cause of

---

[78] SAC, ¶¶ 35-36; Kim Aff., ¶¶ 10-11, Exhibit B-C.
[79] Kim Aff., ¶ 27.
[80] *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).
[81] *Id*.
[82] *Iqbal*, 556 U.S. at 678 (quotation omitted).

action will not do," to overcome a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6).[83] "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, [the complaint] 'stops short of the line between possibility and plausibility of entitlement to relief.'"[84]

### D. Even Assuming the Court Could Exercise Personal Jurisdiction Over Defendants, Plaintiff Has Failed Plausibly Plead a Claim for Vicarious Liability Against Defendants

For the same reasons discussed above, Plaintiff's allegations of vicarious liability against WMI are insufficient to overcome a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Plaintiff's claims against WMI boil down to two allegations. First, that after Plaintiff was called by, and engaged the Synergy agent, he received a contract from WMI via DocuSign.[85] Second, that during one phone conversation an agent from Synergy allegedly stated that WMI was their "subsidiary."[86]

However, Plaintiff's complaint lacks any allegations that WMI ever had any direct interactions with him, or that Plaintiff was ever transferred to WMI during a call with Synergy—factual allegations which courts within this district have looked at for vicarious liability for a third party's alleged TCPA violations.[87] The mere fact that WMI sent Plaintiff a contract after he started to receive calls from Synergy is not enough to plausibly plead Synergy was acting as WMI's agent in making those calls.[88] Nor are any alleged unilateral statements by Synergy regarding its alleged relationship with WMI sufficient to plausibly plead and agency relationship between Synergy and

---

[83] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).
[84] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).
[85] SAC, ¶¶ 35-36.
[86] SAC, ¶ 37.
[87] *Callier v. Nat'l United Grp., LLC*, No. EP-21-CV-71-DB, 2021 WL 5393829, at *6 (W.D. Tex. Nov. 17, 2021).
[88] See e.g. *Shanahan v. Nat'l Auto Prot. Corp.*, No. 1:19-CV-03788, 2020 WL 3058088, at *6 (N.D. Ill. June 9, 2020) ("This Court remains unpersuaded that Plaintiff plausibly alleges that merely receiving a Service Plan from Matrix Warranty would cause a reasonable third-party to believe that the seller must have been their agent.")

WMI.[89]

Plaintiff's claim for vicarious liability is otherwise made up entirely of formulaic and conclusory allegations,[90] which are not sufficient to overcome a motion to dismiss.[91] Accordingly, even assuming this Court had personal jurisdiction over WMI, Plaintiff's claims against WMI would still be subject to dismissal under Fed. R. Civ. P. 12(b)(6).

### 1. Even Assuming the Defendants Were Vicariously Liable for Synergy's Actions, Plaintiff Has Failed to Accurately Plead a TCPA Claim

Even if this Court determines that WMI can be held vicariously liable for Synergy's actions, Plaintiff has failed to plead a cognizable TCPA claim against Defendants. The TCPA makes it unlawful for persons "to make any [unconsented] call using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service."[92] An automatic telephone dialing system ("ATDS") for purposes of the TCPA is defined as "equipment that has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."[93]

In *Camunas v. National Republican Senatorial Committee*, the court explained that bare allegations that defendant placed calls using automated dialing technology were insufficient to

---

[89] *Warciak v. Subway Rests., Inc.*, 949 F.3d 354, 357 (7th Cir. 2020) ("statements by an agent are insufficient to create apparent authority without also tracing the statements to a principal's manifestations or control.") (citing to Restatement (Third) of Agency § 2.03 cmt. c (2006).)

[90] SAC, ¶¶ 102-121.

[91] *See, e.g., Callier v. Nat'l United Grp., LLC*, No. EP-21-CV-71-DB, 2021 WL 5393829, at *6 (W.D. Tex. Nov. 17, 2021) (discussing cases in which conclusory allegations of vicarious liability were insufficient to overcome a motion to dismiss); *Cunningham v. Lifestyles Dev., LLC*, No. 419CV00006ALMCAN, 2019 WL 4282039, at *4 (E.D. Tex. Aug. 8, 2019*), report and recommendation adopted*, No. 4:19-CV-00006, 2019 WL 4277507 (E.D. Tex. Sept. 10, 2019) (rejecting conclusory allegations of vicarious liability made by the plaintiff).

[92] 47 U.S.C. § 227(b)(1)(A)(iii). Here, it is likely that Synergy made such calls with Plaintiff's consent. Plaintiff admits that he "applied for a loan and submitted an application to Synergy." SAC, ¶ 35. It is likely that Plaintiff listed his personal phone number on the application, which would provide Defendants his consent for telephone calls and communications. *See Cherkaoui v. Santander Consumer USA, Inc.,* 32 F. Supp. 3d 811 (S.D. Tex. 2014) (The plaintiff putting his "telephone number on the credit application that he completed in connection with the retail installment sales contract executed in purchasing an automobile constituted his prior express consent to be contacted on that cell phone using an automated telephone dialing system.").

[93] 47 U.S.C. § 227(a)(1).

trigger the TCPA and instead plaintiff must provide details about the contents of the calls, the absence of a relationship between the parties, and the random nature of the automation device used to make the calls before it can plausibly allege a TCPA violation.[94]

Similarly, in *Barnett v. Bank of America*, the court held that the plaintiff's TCPA claim failed because the plaintiff's allegations of the defendant's use of ATDS in placing the calls failed to negate that the number chosen for the calls were selected from a pre-existing list based on criteria from the dialer administrators rather than by random or sequential number generators.[95]

Thus, to survive a motion to dismiss for failure to state a claim, plaintiffs must plausibly allege the content of the messages and the random nature of the automation device used to make the calls as well as expressly affirm the absence of a pre-existing relationship with defendants.[96] Plaintiff's allegations, however, are remarkably devoid of these prerequisites. Plaintiff does not allege that Synergy's telephone system had the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers. Similarly, Plaintiff does not allege that calls he received were from an artificial or prerecorded voice. Instead, Plaintiff alleges that he spoke to specific representatives from Synergy, namely Aaron Cruz and Dan Brown.[97] Thus, because there are no facts in the record that indicate that Synergy utilized an automatic telephone dialing system or an artificial or prerecorded voice to call Plaintiff, his TCPA

---

[94] *Camunas v. Nat'l Republican Senatorial Comm.*, 541 F. Supp. 3d 595, 602-03 (E.D. Pa. 2021).

[95] *Barnett v. Bank of Am.*, N.A., 3:20-cv-272-RJC-DSC, 2021 U.S. Dist. LEXIS 101171, at *9 (W.D. N.C. May 28, 2021).

[96] *See, e.g., Camunas*, 541 F. Supp. 3d at 602-03 (explaining that bare allegations that defendant placed calls using automated dialing technology is insufficient to trigger the TCPA; plaintiff must provide some details of the contents of the calls, the absence of a relationship between the parties, and the random nature of the automation device used to make the calls before it can plausible allege a TCPA violation); *Barnett*, 2021 U.S. Dist. LEXIS 101171, at *9 (TCPA claim failed because the number chosen for the calls were selected from a pre-existing list created based on criteria from the dialer administrators rather than by random or sequential number generators).

[97] SAC, ¶ 92.

BN 73767832v2

claim fails and must be dismissed.[98]

      **2.**      **Plaintiff Failed To Adequately Plead a Violation of Texas Business and Commercial Code Section 304.053.**

      Texas Business and Commerce Code section 305.053 ("Section 305.053") creates a right of action for "a person who receives a communication that violates [the TCPA] [or] a regulation adopted under that provision . . . against the person who originates the communication . . . ."[99] Therefore, the elements of a Section 305.053 claim "correspond to the necessary elements for a TCPA claim."[100] Where a plaintiff's underlying TCPA claims are not are cognizable, a plaintiff's Section 305.053 are not cognizable as well.[101]

      Here, Plaintiff has failed to demonstrate critical elements of a TCPA claim, namely that Synergy's telephone system had the capacity to store or produce telephone numbers and call randomly or sequentially. Similarly, Plaintiff does not allege that calls he received were from an artificial or prerecorded voice. Thus, Plaintiff has failed to allege a violation of the TCPA as well as Section 305.053.

      **3.**      **Plaintiff Has Failed to Plead a Texas Business and Commerce Code Section 302.101 Claim.**

      Texas Business and Commerce Code section 302.101 ("Section 302.101") states that a

---

[98] *See Garcia v. Rauch-Milliken Int'l, Inc.*, No. 5-18-CV-01028-FB-RBF, 2020 WL 3579201, at *5 (W.D. Tex., Feb. 14, 2020), *report and recommendation adopted* (W.D. Tex., Mar. 4, 2020, No. CV SA-18-CA-1028-FB) 2020 WL 3579822 ("Because there is no evidence in the record suggesting that Rauch Milliken's telephone system had the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers, summary judgment on Garcia's TCPA claim should be granted in Rauch-Milliken's favor.").

[99] Tex. Bus. & Com. Code § 305.053(a).

[100] *Callier v. GreenSky, Inc.*, No. EP-20-CV-00304-KC, 2021 WL 2688622, at *6 (W.D. Tex. May 10, 2021).

[101] *Cherkaoui v. Santander Consumer USA, Inc.*, 32 F.Supp.3d 811, 815 (S.D. Tex. 2014) ("As Santander did not violate the TCPA, Santander also did not violate related Texas state law claims arising under the Texas Business and Commercial Code § 305.053 ("Texas TCPA"). The Texas TCPA proscribes only that conduct which is also prohibited by the TCPA. If no violation of the TCPA exists, there is no violation of the Texas TCPA."); *Hunsinger v. Buyers*, No. 3:21-cv-1598-D, 2022 U.S. Dist. LEXIS 32319, at *18 (N.D. Tex. Feb. 24, 2022); *Cunningham v. Creative Edge Mktg.* LLC, No. 4:19-cv-00669-ALM-CAN, 2021 U.S. Dist. LEXIS 126863, at *11-12 (E.D. Tex. June 16, 2021) (explaining that if there is no violation under 47 C.F.R. section 227, then there can be no violation of Texas Business & Commerce Code section 305.053).

person "may not make a telephone solicitation" "from a location in [Texas]" or "to a purchaser located in [Texas]," (2) "unless the [person] holds a registration certificate for the business location from which the telephone solicitation is made."

Here, it is undisputed that Kim nor WMI ever called Plaintiff, a Texas resident. Thus, Defendants did not make a solicitation to Plaintiff and his Section 302.101 claim must be dismissed.

## V.     <u>**CONCLUSION**</u>

For the reasons set forth above, WMI respectfully requests that the Court grant its motion to dismiss.

Respectfully submitted,

AINSA HUTSON HESTER & CREWS LLP
5809 Acacia Circle
El Paso, Texas 79912
Tel:     (915) 845-5300
Fax:     (915) 845-7800

**And**

BUCHALTER
A Professional Corporation
ARTIN BETPERA, Esq.
*abetpera@buchalter.com*
18400 Von Karman Ave., Ste. 800
Irvine, California  92612-0514
Tel:     (949) 224-6422
Fax:     (949) 720-0182

By: */s/ Chantel Crews*
        Chantel Crews
        State Bar No. 24007050
        *ccrews@acaciapark.com*

*Attorneys for Defendants* WIDE MERCHANT
INVESTMENT, INC., and DAVID BOEM JOON
KIM

BN 73767832v2

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on December 2, 2022, a true and correct copy of the following instrument was served upon all parties and/or counsel of record pursuant to the Federal Rules of Civil Procedure as reflected below:

Brandon Callier         *Via Electronic Mail*
6336 Franklin Trail Drive
El Paso, Texas 79912
E-mail: <u>Callier74@gmail.com</u>
*Pro Se Plaintiff*


By: <u>/s/ *Chantel Crews*</u>
  Chantel Crews
 *Attorneys for Defendants* WIDE MERCHANT
INVESTMENT, INC., and DAVID BOEM JOON
KIM

19