**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | |
|---|---|
| BRANDON CALLIER, § § § | |
| Plaintiff, § § | EP-22-CV-00123-FM |
| v. § § | |
| WIDE MERCHANT INVESTMENT, § INC. a California corporation, and § DAVID BOEM JOON KIM, SYNERGY § FINANCIAL, EEC and JOHN DOES 1-4, § § | |
| Defendants. § | |

## ORDER GRANTING DEFENDANTS WIDE MERCHANT INVESTMENT, INC AND DAVID BOEM JOON KIM'S MOTIONS TO DISMISS

Before the court is "Defendants Wide Merchant Investment, Inc.'s Motion to Dismiss Second Amended Complaint for Lack of Personal Jurisdiction, or in the Alternative, Failure to State a Claim" [ECF No. 31] and "Defendant David Boem Joon Kim's Motion to Dismiss for Lack of Personal Jurisdiction, or in the Alternative, Failure to State a Claim" [ECF No. 32] filed December 2, 2022, by Wide Merchant Investment, Inc. ("WMI") and David Boem Joon Kim ("Kim"). Therein, both motions request that Plaintiff's second amended complaint be dismissed for lack of personal jurisdiction or failure to state a claim.[1] Both Defendants make identical claims for dismissal and rely on the same affidavit from Kim; therefore, the court is addressing both motions in this order. After due consideration of the relevant law and motions, the court **GRANTS** Defendants' motions to dismiss.

---

[1] "Defendants Wide Merchant Investment, Inc.'s Motion to Dismiss Second Amended Complaint for Lack of Personal Jurisdiction, or in the Alternative, Failure to State a Claim" 1, ECF No. 31, filed Dec. 2, 2022; "Defendant David Boem Joon Kim's Motion to Dismiss for Lack of Personal Jurisdiction, or in the Alternative, Failure to State a Claim" 1, ECF No. 32, filed Dec. 2, 2022.

1

**I.     BACKGROUND**

This case is the result of dozens upon dozens of calls received by Plaintiff from Synergy Financial ("Synergy") in violation of the Telephone Consumer Protection Act ("TCPA").[2] Plaintiff has been on the National Do-Not-Call Registry since December 2007.[3] WMI is a corporation that offers merchant advances to small businesses throughout the United States.[4] David Boem Joon Kim is the CEO of both WMI and Blue Coast Service ("BCS").[5]

Plaintiff's allegations are as follows: Synergy called him in violation of the TCPA multiple times at the behest of WMI and Kim because Synergy was tasked with marketing WMI's services. Synergy is an independent sales organization and is one of several that WMI worked with to obtain customer referrals for their services.[6] WMI itself does not have a contractual relationship with Synergy. Instead, it was BCS that entered into contract with Synergy on August 18, 2020. As Kim is the CEO and officer for both companies, it is debatable they are actually separate entities. Regardless, Kim's affidavit states that neither himself, WMI, nor BCS had any control over how Synergy marketed or obtained their referrals. Because of this, Kim argues that this court does not have personal jurisdiction over himself nor WMI.

**II.    LEGAL STANDARD**

Defendants raise both a motion to dismiss for lack of personal jurisdiction and motion to dismiss for failure to state a claim. When a court is confronted by a motion raising a combination

---

[2] *See* "Plaintiff's Second Amended Complaint" ("Complaint") 14–15, ECF No. 27-3, filed Sep. 1, 2022.

[3] *Id.* at 6.

[4] "Affidavit of David Boem Joon Kim in Support of Motion to Dismiss for Lack of Personal Jurisdiction or in the Alternative, Failure to State a Claim" ("Affidavit") 2, ECF No. 31-1, filed Dec. 2, 2022.

[5] *Id.*

[6] *Id.*

2

of Rule 12(b) defenses, it will pass on the jurisdictional issues before considering whether a claim was stated by the complaint. As such, the court will start with Defendants' personal jurisdiction claims.

There are two types of personal jurisdiction: general jurisdiction and specific jurisdiction. "General personal jurisdiction over a party permits the forum to resolve any dispute involving that party, not just the dispute at issue."[7] A state has general jurisdiction for a corporation "in which the corporation is fairly regarded as at home."[8] "For an individual [it is where] the individual's domicile" is located.[9]

For specific jurisdiction to exist, "the suit must 'arise out of or relat[e] to the defendant's contacts with the forum.'"[10] "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'"[11] "The burden of establishing personal jurisdiction over a non-resident defendant lies with the plaintiff."[12]

Analysis of personal jurisdiction begins with a state's long-arm statute. "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry reduces to only the federal due process analysis."[13] Plaintiff must show that Defendants had "minimum contacts with Texas—meaning that [they] 'purposely availed [themselves] of [Texas's] benefits and

---

[7] *Newsome v. Gallacher*, 722 F.3d 1257, 1264 (10th Cir. 2013).

[8] *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 262 (2017).

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 753 F.3d 521, 529 (5th Cir. 2014).

[13] *Conn Appliances, Inc. v. Williams*, 936 F.3d 345, 347 (5th Cir. 2019).

protections'—and that exercising jurisdiction will not 'offend traditional notions of fair play and substantial justice."[14] To evaluate if minimum contacts exists with the forum, courts look at: (1) "if the defendant purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there"; (2) "ask if the case arises out of or results from the defendant's forum-related contacts"; (3) "ask if the exercise of personal jurisdiction is fair and reasonable."[15]

When a district court does not hold an evidentiary hearing on personal jurisdiction, the Plaintiff bears the burden of "establishing a prima facie case of personal jurisdiction."[16] The parties may submit affidavits in relation to a personal jurisdiction dispute. In deciding whether a plaintiff meets their burden, "we take as true the nonconclusory, 'uncontroverted allegations in the plaintiff's complaint' and we resolve 'conflicts between the facts contained in the parties' affidavits. . . in the plaintiff's favor."[17] "If a plaintiff establishes minimum contacts, the burden then shifts to the defendant to show that asserting jurisdiction would offend traditional notions of fair play and substantial justice."[18]

## III. DISCUSSION

As a preliminary matter, Plaintiff alleges that the state of Texas has general jurisdiction over WMI and Kim. He is wrong on that point. Kim, in his individual capacity, does not live in

---

[14] *Id.*

[15] *Bulkley & Assocs., L.L.C. v. Dep't of Indus. Rels., Div. of Occupational Safety & Health of the State of California*, 1 F.4th 346, 351 (5th Cir. 2021).

[16] *Williams*, 936 F.3d at 347.

[17] *Bulkley & Assocs., L.L.C.*, 1 F.4th at 350.

[18] *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985).

4

the State of Texas and does not own or lease any property in Texas.[19] Therefore, Texas does not have general jurisdiction over Kim.

For corporations, The Supreme Court has stated that general jurisdiction exists only if the "corporation's 'affiliations with the State are so 'continuous and systematic' as to render it essentially at home in the forum State.'"[20] The Plaintiff contends that WMI, and by proxy Kim as the CEO, are subject to the general jurisdiction of Texas because WMI sent a contract to Plaintiff following Synergy's violative phone calls. Additionally, Plaintiff states that WMI filed at least 68 complaints in Harris County, Texas. These complaints contain statements that "venue is proper because this is where. . . Plaintiff (WMI) resides."[21]

However, the Fifth Circuit has recognized that "it has become 'incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business.'"[22] Generally, the Fifth Circuit has expressed that general jurisdiction is not found when the defendant corporation, "maintained no offices in Texas; they had no personnel stationed there; they paid no Texas taxes and had no registered agent for service of process; and, although sustained over an appreciable period, transacted only limited and discrete business there."[23] WMI is a California Corporation and its principal place of business is in the County of Los Angeles. WMI

---

[19] Affidavit at 1.

[20] *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

[21] "Response to Wide Merchant Investment, Inc.'s (WMI) motion to dismiss Plaintiff's Second Amended Complaint" 5, ECF No. 36, filed Dec. 27, 2022.

[22] *Nelson v. PNK (Lake Charles) LLC*, No. 3:20-CV-00133, 2020 WL 7706815 (S.D. Tex. Sept. 30, 2020), report and recommendation adopted, No. 3:20-CV-00133, 2020 WL 6130877 (S.D. Tex. Oct. 16, 2020) (quoting *Monkton Ins. Servs. Ltd v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014).

[23] *Companion Prop. & Cas. Ins. Co. v. Palermo*, 723 F.3d 557, 560 (5th Cir. 2013).

5

does not have any offices or employees in the State of Texas.[24] WMI offers its services throughout the United States, not just Texas.[25] Therefore, Texas does not have general jurisdiction over WMI.

Moving to specific jurisdiction, the Plaintiff also asserts Defendants' contacts include the dozens of phone calls Synergy made to Plaintiff even after he informed them he was on the National Do-Not-Call List. He alleges that those phone calls, in combination with the earlier addressed contacts, establish personal jurisdiction for his TCPA claim.

The first prong of the minimum contacts test is: "if the defendant purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there." WMI and Kim meet the first prong. They did purposely direct their activities toward the forum state, by utilizing Texas courts for their lawsuits and soliciting business in the state. Specifically, when they sent the Plaintiff a contract for their services. These facts show the Defendants availing themselves to the privileges of conducting activities in Texas.

The sticking point for Plaintiff is the second prong: "ask if the case arises out of or results from the defendant's forum-related contacts." The phone calls and text messages that Plaintiff received are forum-related contacts. The case itself is a TCPA claim where it is unlawful "to make any call using an automatic telephone dialing system or an artificial or prerecorded voice. . . to any telephone number assigned to a. . . cellular telephone service."[26] Thus, this case does arise out of the forum-related contacts of the phone calls and text messages. However, they are not the Defendants' contacts, the calls and messages came from Synergy.

---

[24] Affidavit at 1–2.

[25] Affidavit at 2.

[26] 47 U.S.C. § 227(b)(1)(A)(iii).

The email the Defendants sent to Plaintiff is not a phone call or text message that gives rise to a TCPA claim, and Defendants' use of Texas courts does not give rise to the instant TCPA case. Therefore, Plaintiff relies on vicarious liability and argues that Synergy is the agent of Defendants and made the calls on their behalf. This is the main issue: is Synergy an agent of Defendants so that their contacts can be imputed onto the Defendants and establish personal jurisdiction?

 A. *Synergy is Not an Agent of the Defendants*

"Agency relationships, we have recognized, may be relevant to the existence of specific jurisdiction. . . as such, a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there."[27] If an agency relationship exists then the callers contacts with the State can be attributable to the principal.[28] This principle aligns with the purpose of the TCPA statute because "the TCPA would no longer offer consumers relief from intrusive robocalls if sellers could 'avoid potential liability by outsourcing its telemarking activities to unsupervised third parties.'"[29] However, if vicarious liability or an agent relationship cannot be established then the offending contacts by the third party cannot support jurisdiction.[30]

Vicarious liability under the TCPA is governed by the federal common law of agency.[31] An agency relationship exists when one person or entity "manifests assent" to another person or entity "that the agent shall act on the principal's behalf and subject to the principal's control, and

---

[27] *Daimler AG*, 571 U.S. at 135.

[28] *See Bradley v. DentalPlans.com.*, 617 F.Supp.3d 326, 337 (D. Md. 2022).

[29] *Id.*

[30] *See Canales v. Michaux*, No. 1:18-CV-507-RP, 2019 WL 13153212 (W.D. Tex. Dec. 9, 2019).

[31] *Bradley*, 617 F.Supp.3d at 339.

the agent manifests assent or otherwise consents so to act."[32] The essential element of an agency relationship is the principal's control over the agent's actions. For TCPA cases, the relevant inquiry is "whether the principal controlled—or had the right to control—the 'manner and means' of the telemarketing campaign."[33] The Fifth Circuit has expounded that the level of control "must be high and very significant."[34]

In *Bradley v. DentalPlans.com*, a TCPA case, DentalPlans.com ("DentalPlan") was found to be the agent of Cigna. Evidence showed Cigna had the right to provide interim instructions to [the telemarketer] in the form of a script modification and Cigna provided a script for DentalPlan to use. Cigna had the authority to terminate the relationship unilaterally, but DentalPlan did not. Cigna allowed DentalPlan to market its dental discount plan only if DentalPlan provided Cigna with detailed information about its marketing strategies. DentalPlan needed Cigna's prior written approval to market Cigna's products, and Cigna had the ability to direct or immediately suspend any third party from marketing, advertising, or promoting the Discount Service Program.[35] This evidence clearly showed that Cigna had a very high level of control over how DentalPlans.com marketed its services.

In *Callier v. SunPath Ltd.*, another TCPA case, an agency relationship was not found. Affidavits provided by SunPath and Northcoast laid out that neither entity-maintained control or oversight over the third-party marketing firms that made the calls.[36] Nor did either entity select

---

[32] *Id.*

[33] *Id.*

[34] *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 753 F.3d 521, 530 (5th Cir. 2014).

[35] *Bradley*, 617 F.Supp.3d at 341.

[36] *Callier v. SunPath Ltd.*, No. IP-20-CV-00106-FM, 2020 WL 10285659 *3 (W.D. Tex. Aug. 10, 2020).

who the third-party marketing firms marketed to, or the manner in which those marketing firms conducted their operations.[37] In addition, just like in this case, Plaintiff offered no affidavit or support contradicting the Defendants' affidavits.

In *Krakauer v. Dish Network, L.L.C.*, an agency relationship was found between Dish Network and a third-party, SSN. SSN was contracted by Dish Network to reach out to its customers and try to get them to purchase Dish TV services.[38] SSN reached out to customers in violation of the TCPA. The Fourth Circuit determined that an agency relationship existed because Dish had broad authority over SSN's business. This control included what technology and records SSN had to retain, Dish's contract with SSN clearly stated it had authority over SSN regarding TCPA compliance, SSN used Dish's logo in carrying out its operation, and Dish was aware of SSN's legal violations but took no meaningful action to ensure compliance.[39]

WMI and Kim put forth Kim's affidavit stating that WMI works with independent sales organizations ("ISOs") to market its services and obtain referrals.[40] These ISOs are independent brokers who will conduct and operate their own marketing campaigns to obtain potential referrals.[41] Synergy is one of these ISOs.

BCS entered into a contract with Synergy on August 18, 2020, specifying that Synergy was to market and obtain referrals for WMI.[42] Kim's affidavit states that neither WMI nor BCS

---

[37] *Id.*

[38] *Krakauer v. Dish Network L.L.C.*, 925 F.3d 643, 645 (4th Cir. 2019).

[39] *Id.* at 660.

[40] Affidavit at 2.

[41] *Id.*

[42] *Id.*

exercised any control over the means and methods by which Synergy carries out its duties under the contract.[43] WMI and BCS had no control over Synergy's marketing campaign, how Synergy obtained leads, and what Synergy said during calls.[44] Kim states that neither WMI, himself, nor BCS ever called or spoke with Plaintiff over the phone.[45] Kim further states that prior to this lawsuit, nobody at WMI or BCS had any knowledge of any sort of calls made by Synergy, and that WMI did not know, and had never received any complaints, of Synergy making telemarketing calls in violation of the TCPA.[46] Following WMI and Kim's notice of this lawsuit, they purportedly requested Synergy to honor Plaintiff's request to no longer contact him. Subsequently, WMI learned that Plaintiff continued to receive calls from Synergy, upon which BCS terminated its contract with Synergy effective September 28, 2022.[47] Plaintiff listed that the last call from Synergy came on August 30, 2022.

A review of the contract between BCS and Synergy supports statements in Kim's affidavit. Synergy is referred to as an "independent marketing and referral agent."[48] The contract was set to automatically renew annually so long as Synergy sent a minimum of four referrals that resulted in services purchased.[49] The contract allowed both parties to terminate at any time, not just BCS. Synergy was not allowed to use BCS's logo, trademark, or trade name without BCS's consent to

---

[43] *Id.* at 3.

[44] *Id.* at 3–4.

[45] *Id.* at 4.

[46] *Id.* at 6.

[47] *Id.* at 7.

[48] "Independent Agent Marketing and Referral Agreement" 1, ECF No. 31-1, filed Dec. 2, 2022.

[49] *Id.*

do so.[50] Any expenses incurred by Synergy while marketing was to be Synergy's sole responsibility.[51]

Unlike *Bradley* and *Krakauer,* WMI and BCS could not unilaterally terminate the contract. They did not specify how Synergy would market its services or that Synergy must use their company's logos and branding. WMI and BCS did not provide scripts to Synergy. They also did not reimburse or cover expenses incurred by Synergy. Lastly, the contract allowed Synergy to market other companies' services in addition to WMI's. The only limitation was that Synergy was not to refer the same customer to both WMI and other companies who provided similar services.[52] However, there is an explanation for this clause which goes as follows: "such a practice limits the ability to accurately determine the [customer's] receivables available to be purchased, and multiple sales of the same receivables could be made by the [customer]." Thus, there is a practical explanation for such a clause beyond just "exerting control" over Synergy's dealings. The contract, affidavit, and precedent establish that WMI and Kim did not exert control over Synergy.

There are alternative ways to establish an agency relationship beyond just actual authority. These ways include apparent authority and ratification. An agent has apparent authority to bind a principal if a third party reasonably believes the agent has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations.[53] "Apparent authority. . . can exist where 'the principal knowingly permits the agent to exercise authority, or the principal holds the

---

[50] *Id.* at 3.

[51] *Id.*

[52] *Id.* at 3.

[53] *Bradley*, 617 F.Supp.3d at 326.

11

agent out as possessing such authority.'"[54] Neither WMI, BCS, nor Kim held Synergy out as possessing authority to make calls on their behalf. The contract between BCS and Synergy specifically states that "[Synergy] shall never represent nor avouch to any person(s) that he/she is an employee of BCS."[55] Synergy was limited solely to referring customers to BCS or WMI and, only BCS "shall have the absolute sole discretion to review merchant's application, approve and execute a Merchant Receivable Sale Agreement."[56] Therefore, apparent authority is not met.

The final agency theory available to Plaintiff is ratification. Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority.[57] A party "may ratify an act by failing to object to it or to repudiate it," or by "receiving or retaining [the] benefits it generates."[58] "A purported principal, however, 'is not bound by a ratification made without knowledge of material facts involved in the original act when the [party] was unaware of such lack of knowledge.'"[59] Therefore, for WMI and Kim to be held vicariously liable under ratification they must have been aware of the actions of Synergy and did not object or repudiate the benefits.

In *Aranda v. Caribbean Cruise Line, Inc.*, a party was held liable under ratification theory, because it knowingly accepted the benefits that flowed from the call campaign in the form of increased business.[60] There is evidence that the party (Berkley) was aware of the call campaign,

---

[54] *Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 237 (4th Cir. 2019).

[55] "Independent Agent Marketing and Referral Agreement" 3, ECF No. 31-1, filed Dec. 2, 2022.

[56] *Id.* at 2.

[57] RESTATEMENT (THIRD) OF AGENCY § 4.01(1) (AM. L. INST. 2006).

[58] *Id.*

[59] *Id.* at § 4.06.

[60] *Aranda v. Caribbean Cruise Line, Inc.*, 179 F.Supp.3d 817, 831 (N.D. Ill. 2016).

12

and that it violated the TCPA, but thought that it could drum up business.[61] Yet there was no evidence that the party took any steps to ensure it would no longer receive leads generated through potentially unlawful calls.[62]

Conversely, in *Johansen v. HomeAdvisor, Inc.*, the alleged principal was held not liable under a ratification theory. HomeAdvisor contracted with a company to send HomeAdvisor leads for customers.[63] This company in turn hired another company to generate those leads. This "other company" made phone calls that violated the TCPA.[64] The plaintiff argued HomeAdvisor was vicariously liable because HomeAdvisor received the benefit of the "other company's" calls and knew about these calls.[65] The evidence showed, through HomeAdvisor's declaration, that the company neither knew nor should have known that the "other company" was violating the TCPA.[66] HomeAdvisor was not aware the company it contracted with to generate customer leads then contracted with a third company to generate those leads. HomeAdvisor did not know of the TCPA violations of this third company until the complaint was filed.[67] The only red flag that HomeAdvisor should have known about the TCPA violations is that the plaintiff had previously

---

[61] *See Id.* at 833.

[62] *Id.*

[63] *Johansen v. HomeAdvisor, Inc.*, 218 F.Supp.3d 577, 581 (S.D. Ohio 2016).

[64] *Id.*

[65] *Id.* at 585.

[66] *Id.* at 585–86.

[67] *Id.* at 586.

sued for calls made by third parties on behalf of Home Advisor. However, this was not enough to establish HomeAdvisor knew of the violating calls plaintiff received to satisfy ratification.[68]

This case is similar to *Johansen* in that WMI and Kim attest they did not know of any calls made by Synergy in violation of the TCPA. Unlike *Johansen*, Kim states that WMI never received any complaints about Synergy making violating calls prior to Plaintiff's complaint. Unlike *Aranda,* when WMI and Kim became aware of Synergy's violative phone calls they requested Synergy to stop contacting Plaintiff. When they learned Synergy continued to contact Plaintiff, BCS terminated its contract with Synergy. Therefore, they did take affirmative steps to ensure no leads would result from violative phone calls. In conclusion, Synergy is not an agent of WMI and Kim under a ratification theory.

As a final matter, Plaintiff makes reference to Kim's affidavit as "full of lies and distortions."[69] For questions of personal jurisdiction, it is the Plaintiff who bears the burden of proving it. Both parties may submit affidavits in support or against personal jurisdiction and to disregard Kim's affidavit would "flip the applicable burden of proof." A declaration will not be dismissed based on a purported lack of factual specificity.[70] The plaintiff cannot "rest on his pleadings to answer the movant's affidavits, but must set forth, by affidavit or otherwise[,]. . .

---

[68] *Id.* at 588.

[69] "Response to Wide Merchant Investment, Inc.'s (WMI) motion to dismiss Plaintiff's Second Amended Complaint" 9, ECF No. 36, filed Dec. 27, 2022.

[70] *Bradley*, 617 F.Supp.3d at 326.

specific facts showing the court has jurisdiction."[71] The court need not reach Defendants' arguments for failure to state a claim because personal jurisdiction is a threshold issue.

## IV. CONCLUSION

This court does not have personal jurisdiction over WMI and Kim. General jurisdiction is lacking because neither party is at home in Texas. Specific jurisdiction is also lacking as the offending contacts were made by Synergy and not by WMI or Kim. Synergy's contacts cannot be imputed to WMI or Kim because Synergy was not acting as their agent.

Accordingly, it is **HEREBY ORDERED** that WMI's "Motion to Dismiss Second Amended Complaint for Lack of Personal Jurisdiction, or in the Alternative, Failure to State a Claim" [ECF No. 31] and Kim's "Motion to Dismiss for lack of Personal Jurisdiction, or in the Alternative, Failure to State a Claim" [ECF No. 32] are **GRANTED**.

**SIGNED AND ENTERED** this **27th** day of **April 2023.**

_____
**FRANK MONTALVO
SENIOR UNITED STATES DISTRICT JUDGE**

---

[71] *Johansen*, 218 F.Supp.3d at 582.