**RECEIVED**

June 05, 2023

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _Javier Martinez_

DEPUTY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**El PASO DIVISION**

| | |
|---|---|
| **BRANDON CALLIER,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| **v.** § | |
| § | |
| **SYNERGY BPO LLC,** aka **SYNERGY** § | |
| **FINANCIAL LLC,** a Texas Limited Liability § | **Case No. EP-22-CV-00123-FM** |
| Company, **MIRZA S AHMED JEWEL,** and § | |
| **JOHN DOES 1-4** § | |
| § | |
| **Defendants.** § | |
| § | |

**PLAINTIFF'S THIRD AMENDED COMPLAINT**

COMES NOW PLAINTIFF BRANDON CALLIER with his Third Amended Complaint

and will allege and show as follows:

**PARTIES**

1.      The Plaintiff is BRANDON CALLIER ("Callier"), a natural person, and was present in

Texas for all calls, in this case in El Paso County.

2.      Defendant SYNERGY BPO LLC aka Synergy Financial LLC ("Synergy") is a Texas

Limited Company and can be served via registered agent Mirza S Ahmed Jewel at 6616

McMakin Court Colleyville, Texas 76034.

3.      Defendant MIRZA S AHMED JEWEL is the principal officer of Defendant Synergy and

can be served at 6616 McMakin Court, Colleyville, Texas 76034.

**JURISDICTION AND VENUE**

4.     <u>Jurisdiction</u>.  This Court has federal-question subject matter jurisdiction over Plaintiff's

TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow*

*Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

5.     This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising

under Texas Business and Commerce Code 305.053 because that claim arises from the same

nucleus of operative fact, i.e., Defendants' telemarketing robocalls to Plaintiff; adds little

complexity to the case; and doesn't seek money damages, so it is unlikely to predominate over

the TCPA claims.

6.     <u>Personal Jurisdiction.</u>  This Court has general personal jurisdiction over the Defendants

because they are both Texas residents.

7.     <u>Venue.</u>  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a

substantial part of the events giving rise to the claims—the calls and sale of goods and services

directed at Texas residents, including the Plaintiff—occurred in this District and because the

Plaintiff resides in this District.  Residing in the Western District of Texas when he received a

substantial if not every single call from the Defendants that are the subject matter of this lawsuit.

## THE TELEPHONE CONSUMER PROTECTION
## ACT OF 1991, 47 U.S.C. § 227

8.     In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing

equipment that could target millions of consumers *en masse*.  Congress found that these calls

were not only a nuisance and an invasion of privacy to consumers specifically but were also a

threat to interstate commerce generally.  *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in

1991 U.S.C.C.A.N. 1968, 1969-71.

9.      The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

10.     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

11.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b) 47 U.S.C. § 227(b)(3).

12.     Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

13.     The TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[2]

14.     According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).
[2] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

15.     The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

16.     The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.  In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

17.     *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations."  *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

18.     The FCC confirmed this principle in 2013 when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

19.     Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

20.     A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at \*10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of29  a corporation could avoid individual liability, the TCPA would lose much of its force.").

## The Texas Business and Commerce Code 305.053

21.     The Texas Business and Commerce code has an analogous portion that is related to the TCPA and was violated in this case.

22.     Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

## FACTUAL ALLEGATIONS

23.     Plaintiff has been on the National Do-Not-Call Registry since December 2007.

24.     Plaintiff has received nearly one hundred phone calls within a twelve-month period to his personal cell phone ending in 4604 from a company named Synergy Financial ("Synergy") soliciting business funding.

25.     Table A below outlines the phone calls Plaintiff was able to log.  However, Plaintiff has continued to receive phone calls which will be revealed during Discovery.

26.     Calls 1-7:  Plaintiff received the first phone call on January 6, 2022, from a Synergy employee and/or agent named Dan Brown calling from phone number 917-765-3437.  Plaintiff was solicited for business funding via a merchant cash advance ("MCA").  Plaintiff received an

additional six phone calls from this phone number from February 2, 2022, to February 4, 2022.

27.     Calls 8-9.  On February 18, 2022, Plaintiff received two phone calls from the phone number 915-921-1529 soliciting a merchant cash advance on behalf of Synergy Financial.

28.     Calls 10-16.  Between February 18, 2022, and February 22, 2022, Plaintiff received a total of seven phone calls from phone number 917-764-7079 soliciting a merchant cash advance on behalf of Synergy.

29.     Calls 17-24.  Between February 22, 2022, and March 16, 2022, Plaintiff received eight (8) automated text messages from short text number 21093 soliciting Plaintiff for a merchant cash advance on behalf of Synergy.

30.     On March 15, 2022, Plaintiff applied for a loan and submitted an application to Synergy for the sole purpose of identifying the United States-based company on whose behalf Synergy was placing the phone calls.

31.     On March 17, 2022, at 5:24 PM as a direct and approximate result of the phone calls Plaintiff received from Synergy, and the application Plaintiff submitted to Synergy, Plaintiff received a contract for $40,000 directly from WMI via an email from info@widemerchant.com.

32.     On March 18, 2022, 9:33 AM Plaintiff received a phone call from a Synergy representative and had the following phone conversation.

> Synergy rep: "Did you receive the contract yesterday?"
> Plaintiff: "Who is it coming from?  What am I looking for in my email?"
> Synergy rep: "It should be coming from Wide Merchant ("WMI") and it's a DocuSign contract."
> Plaintiff: "Wide Merchant?"
> Synergy rep: "Yes, Wide Merchant, one of our subsidiary companies.  They should be sending you the contract from DocuSign.  It was sent yesterday at night.  I mean yesterday late afternoon."
> Plaintiff: "I got a contract that came in at 5 AM this morning. I just looked in my email."
> Synergy rep: "And how much is it for?"

> Plaintiff: "I haven't opened it up.  I just looked on my phone.  I just searched Wide Merchant on my phone.  So I haven't opened it up."
> Synergy rep: "Yeah, yeah, so that should be the one if its Wide Merchant for $40,000, that should be the one.  We're waiting on you to sign it."

33.     Plaintiff has a recording of the telephone conversation in paragraph 32 made consistent with Texas law.

34.     On March 18, 2022, as a direct and approximate result of the phone calls Plaintiff received from Synergy, Plaintiff received a contract directly from WMI via an email from info@widemerchant.com.

35.     On March 21, 2022, Plaintiff responded to a follow-up text message received by a representative from Synergy named Aaron Cruz that states as follows:

> Aaron: "Any updates on the signed contract? Should I void the contract?" 9:10 AM
> Plaintiff: "I am traveling" 2:57 PM
> Aaron: "Should I void the offer then?" 2:57 PM
> Plaintiff: "Yes. I'm tired of the constant calls. Please don't call again."  2:57 PM
> Aaron: "Why would you be tired?  You did not update me anything (sic) on the contract that was released last week.  Very unprofessional behavior from you." 2:58 PM
> Plaintiff: "Didn't I just tell you not to contact me"?  3:00 PM
> Aaron: "What would you do?  Why did you waste our time?" 3:01 PM

36.     Calls 30-43.  Aaron continued to text and call Plaintiff fourteen times within 30 minutes after Plaintiff explicitly advised Aaron to stop calling.

37.     On April 8, 2022, Plaintiff filed his Original Complaint against WMI alleging TCPA violating phone calls from Synergy on behalf of WMI.

38.     WMI was served with the Complaint on April 28, 2022, and was on notice from that point forward that Plaintiff did not want solicitation phone calls from Synergy or Wide Merchant.

39.     On June 23, 2022, Plaintiff began to receive additional phone calls from Defendant Synergy.

40.     On June 23, 2022, at 9:00 AM Mountain time Plaintiff received another phone call from Synergy.

41.     Plaintiff received additional phone calls from Synergy on July 13, 2022, and July 19, 2022, soliciting Plaintiff for loans through WMI.

42.     On August 11, 2022, Plaintiff received a phone call from Dan Brown ("Brown") soliciting Plaintiff.  Brown followed up this phone call with an email to Plaintiff.

43.     Synergy operates as a clandestine entity that does not have any trackable data on its website.  The Synergy phone number, address, website registration, and other information that could be used to identify a company is not registered to any publicly available source.

44.     A search of all 50 Secretaries of State websites did not find any "Synergy Financial LLC" registered to do business in any state, the District of Columbia, or any United States Territory with an address, phone number, or website that matches the information found at https://www.synergyfinancellc.com.

45.     On December 2, 2022, then Defendant Wide Merchant Investments supplied Plaintiff with the Independent Agent and Marketing and Referral Agreement that listed Synergy BPO LLC as the company behind the phone calls at issue in this case. Exhibit A.

46.     Synergy on multiple occasions used a spoofed local area code in order to trick Plaintiff into thinking the calls were local and availed themselves of the resident forum.

47. Plaintiff received the following calls from Synergy (Table A).

| Number: | Date | Time | Caller ID | Notes |
|---------|------|------|-----------|-------|
| 1 | 10/26/2021 | 1:23 PM | 917-765-3437 | Call from Dan Brown |
| 2 | 10/27/2021 | 12:39 PM | 917-765-3437 | Call from Dan Brown |
| 3 | 01/06/2022 | 12:37 PM | 917-765-3437 | Call from Dan Brown |
| 4 | 02/03/2022 | 2:35 PM | 917-765-3437 | Call from Dan Brown |
| 5 | 02/03/2022 | 3:06 PM | 917-765-3437 | Call from Dan Brown |
| 6 | 02/03/2022 | 4:23 PM | 917-765-3437 | Call from Dan Brown |

| 7 | 02/04/2022 | 12:05 PM | 917-765-3437 | Call from Dan Brown |
|---|---|---|---|---|
| 8 | 02/18/2022 | 9:53 AM | 915-921-1529 | Missed Call |
| 9 | 02/18/2022 | 9:53 AM | 915-921-1529 | Telemarketer for Synergy |
| 10 | 02/18/2022 | 2:55 PM | 917-764-6878 | Direct call from Synergy |
| 11 | 02/22/2022 | 8:26 AM | 917-764-7079 | Direct call from Synergy |
| 12 | 02/22/2022 | 9:36 AM | 917-764-7079 | Direct call from Synergy |
| 13 | 02/22/2022 | 9:36 AM | 917-764-7079 | Direct call from Synergy |
| 14 | 02/22/2022 | 10:22 AM | 917-764-7079 | Direct call from Synergy |
| 15 | 02/22/2022 | 12:48 PM | 917-764-7079 | Direct call from Synergy |
| 16 | 02/22/2022 | 1:01 PM | 917-764-7079 | Direct call from Synergy |
| 17 | 02/22/2022 | 3:04 PM | 21093 | Automated Short Text |
| 18 | 02/22/2022 | 3:05 PM | 21093 | Automated Short Text |
| 19 | 02/24/2022 | 3:05 PM | 21093 | Automated Short Text |
| 20 | 03/03/2022 | 3:01 PM | 21093 | Automated Short Text |
| 21 | 03/07/2022 | 11:17 AM | 21093 | Automated Short Text |
| 22 | 03/07/2022 | 1:15 PM | 21093 | Automated Short Text |
| 23 | 03/16/2022 | 9:02 AM | 21093 | Automated Short Text |
| 24 | 03/16/2022 | 9:02 AM | 21093 | Automated Short Text |
| 25 | 03/17/2022 | 3:38 PM | 917-387-4655 | Call from Aaron Cruz |
| 26 | 03/18/2022 | 10:39 AM | 972-528-5166 | Call from Synergy Agent |
| 27 | 03/18/2022 | 2:28 PM | 917-387-4655 | Call from Aaron Cruz |
| 28 | 03/18/2022 | 2:41 PM | 21093 | Automated Short Text |
| 29 | 03/18/2022 | 3:34 PM | 917-387-4655 | Call from Aaron Cruz |
| 30 | 03/21/2022 | 2:58 PM | 917-387-4655 | Text Message from Aaron Cruz |
| 31 | 03/21/2022 | 2:58 PM | 917-387-4655 | Text Message from Aaron Cruz |
| 32 | 03/21/2022 | 3:00 PM | 917-387-4655 | Text Message from Aaron Cruz |
| 33 | 03/21/2022 | 3:01 PM | 917-387-4655 | Text Message from Aaron Cruz |
| 34 | 03/21/2022 | 3:01 PM | 917-387-4655 | Text Message from Aaron Cruz |
| 35 | 03/21/2022 | 3:02 PM | 917-387-4655 | Call from Aaron Cruz |
| 36 | 03/21/2022 | 3:02 PM | 917-387-4655 | Call from Aaron Cruz |
| 37 | 03/21/2022 | 3:03 PM | 917-387-4655 | Call from Aaron Cruz |
| 38 | 03/21/2022 | 3:03 PM | 917-387-4655 | Call from Aaron Cruz |
| 39 | 03/21/2022 | 3:04 PM | 917-387-4655 | Call from Aaron Cruz |
| 40 | 03/21/2022 | 3:04 PM | 917-387-4655 | Text Message from Aaron Cruz |
| 41 | 03/21/2022 | 3:05 PM | 917-387-4655 | Call from Aaron Cruz |
| 42 | 03/21/2022 | 3:05 PM | 917-387-4655 | Call from Aaron Cruz |
| 43 | 03/21/2022 | 3:28 PM | 917-387-4655 | Call from Aaron Cruz |
| 44 | 03/28/2022 | 10:08 AM | 917-261-3813 | Sent Email after phone call |
| 45 | 03/30/2022 | 12:41 PM | 917-387-4655 | Call from Aaron Cruz |
| 46 | 03/30/2022 | 3:30 PM | 917-261-3813 | Sent Email after phone call |
| 47 | 03/31/2022 | 12:06 PM | 915-285-2010 | Received call from Telemarketer transferred to Michael Gruber |

| 48 | 04/01/2022 | 8:43 AM | 915-302-7171 | Received call from Telemarketer transferred to Michael Gruber |
| 49 | 04/04/2022 | 11:15 AM | 915-302-7171 | Missed Call |
| 50 | 04/05/2022 | 11:35 AM | 915-302-7171 | Received call from Telemarketer transferred to Michael Gruber |
| 51 | 04/05/2022 | 2:00 PM | 917-261-3813 | Missed Call |
| 52 | 04/07/2022 | 2:46 PM | 917-387-4655 | Missed Call |
| 53 | 06/23/2022 | 9:00 AM | 917-764-7740 | Aaron Cruz – Sent email |
| 54 | 06/23/2022 | 9:02 AM | 917-764-7740 | Aaron Cruz sent email confirm |
| 55 | 06/23/2022 | 10:47 AM | 917-387-4655 | Text from Aaron Cruz |
| 56 | 06/23/2022 | 10:47 AM | 917-387-4655 | Text from Aaron Cruz |
| 57 | 06/23/2022 | 11:00 AM | 972-528-5166 | Spoofed call from Aaron Cruz |
| 58 | 06/23/2022 | 2:31 PM | 972-528-5166 | Missed Call |
| 59 | 06/23/2022 | 2:32 PM | 917-624-9818 | Spoke to Aaron Cruz |
| 60 | 07/13/2022 | 2:14 PM | 917-810-5279 | Call from |
| 61 | 07/13/2022 | 3:06 PM | 917-387-4655 | Call from Aaron Cruz |
| 62 | 07/19/2022 | 11:15 AM | 917-590-3169 | Sent email from Dan Brown |
| 63 | 07/19/2022 | 11:32 AM | 917-590-3169 | Spoke to Dan Brown |
| 64 | 08/11/2022 | 4:41 PM | 915-774-6942 | Spoke to Dan Brown.  Sent email. |
| 65 | 08/30/2022 | 4:24 PM | 917-387-4655 | Call from Aaron Cruz |

48.     Defendants employ outrageous, aggressive, and illegal sales techniques that violate

multiple federal laws and state consumer statutes.

49.     None of the Defendants registered pursuant to § 302.101 of the Texas Business &

Commerce Code to provide telephone solicitations. The

https://direct.sos.state.tx.us/telephone/telephonesearch.asp site ("Texas Registration Database")

does not contain any of the Defendants' registrations.

50.     None of the Defendants qualify for an exemption under § 302.101.

51.     No emergency necessitated none of the alleged illegal robocalls.

52.     The Defendants never sent Mr. Callier any do-not-call policy.  Plaintiff sent an internal

do-not-call policy request to info@synergyfinancellc.com and info@widemerchantgroup.com.

53.     On information and belief, the Defendants did not have a written do-not-call policy while

they were sending Mr. Callier the unsolicited calls.

54.    On information and belief, the Defendants did not train its agents who engaged in telemarketing on the existence and use of any do-not-call list.

55.    Defendants participated in, facilitated, directed, authorized, knew of, or willfully ignored the false and misleading sales practices and unlawful robocalling, while knowing facts that required a reasonable person to investigate further, and approved, and ratified the conduct of their employees, agents, and co-conspirators to engage in the false and misleading sales practices and unlawful robocalling.

56.    Mr. Callier has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

## DEFENDANT JEWEL IS PERSONALLY LIABLE

57.    Defendant Jewel refuses to take any action to stop or curtail unlawful sales practices and robocalling because these practices benefit Defendant Jewel financially.

> "If the officer directly participated in or authorized the statutory violation, even though acting on behalf of the corporation, he may be personally liable.  See *United States v Pollution Serv. Of Oswego, Inc*., 763 F.2d 133, 134-135 (2nd Cir.1985) The "well-settled" tort rule provides that "when corporate officers directly participate in or authorized the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable." *General Motos Acceptance Corp. v. Bates*, 954 F.2d 1081, 1085 (5th Cir. 1992).  The Fifth Circuit has elaborated that "the thrust of the general [tort] rule is that the officer to be held personally liable must have some direct, personal participation in the tort, as where the defendant was the 'guiding spirit' behind the wrongful conduct….or the 'central figure' in the challenged corporate activity."  *Mozingo v. Correct Mfg. Corp*., 752

11

F.2d 168, 174 (5ᵗʰ Cirt. 1985) (Citing *Escude Cruz v. Ortho Pharmaceutical Corp.*,

619 F. 2d 902, 907 (1ˢᵗ Cir.1980)) (Citing *Texas v. American Blastfax, Inc.*, 164 F.

Supp. 2d 892 (W.D. Tex. 2001)

Quoting Texas v. American Blastfax:

The Court finds the above principles applicable to the TCPA that is, an officer may be
personally liable under the TCPA if he had direct, personal participation in or
personally authorized the conduct found to have violated the statute, and was not
merely tangentially involved.  Individuals who directly (and here, knowingly and
willfully) violate the TCPA should not escape liability solely because they are
corporate officers.  As the State persuasive argues, to hold otherwise would allow the
individual defendants to simply dissolve Blastfax, set-up a new shell corporation, and
repeat their conduct.  Congress surely did not intend to permit such a result in passing
the TCPA.

To be clear, the Court finds Greg and Michael Horne were the "guiding spirits" an the
"central figures" behind the TCPA violations.  They were the two persons who
controlled all of Blastfax's day-to-day operations.  They both had direct, personal
involvement in and ultimate control over every aspect of Blastfax's wrongful contuct
that violate the TCPA, and/or directly controlled and authorized this conduct.  And
they did so with their eyes and pocketbooks wide open.  After October 5, 2000, Greg
and Michael Horne had good reason to believe they were running a business that
violated the TCPA.  On February 9, 2001, they knew they were.  Yet they continued
to direct their company to send unsolicited intrastate fax advertisements.  This is fare
more than a simple derivative liability case.  Accordingly, the Court *899 holds
defendants Greg and Michael Horne are jointly and severally liable with Defendant
Blastfax, Inc., for all TCPA damages in this lawsuit."  Texas v. American Blastfax,
Inc., 164 F. Supp. 2d 892 (W.D. Tex. 2001)

58.     The Same Court held that corporate officers were also personally liable for
DTPA violations

The State contends Greg and Michael Horne are personally liable for any DTPA
damages because they were solely responsible for the violating conduct…..For the
same reasons discussed in finding the individual defendants personally liable under
the TCPA, the Court agrees.  See, e.g., *Barclay v. Johnson*, 686 S.W.2d 334, 336-37
(Tex. Civ. App.-Houston [1ˢᵀ Dist.] 1985, no writ) (finding personal liability for
corporate officer in DTPA misrepresentation claim, based on general rule that "a
corporate agent knowingly participating in a tortious of fraudulent act may be held
individually liable, even though he performed the act as an agent for the

> corporation……Accordingly, the Court finds defendants American Blastfax, Inc., Greg Horne and Michael Horne are jointly and severally liable for $6,000 in damages for their violations of the DTPA." *Texas v. American Blastfax, Inc*., 164 F. Supp. 2d 892 (W.D. Tex. 2001

59.    At all times material to the Complaint, acting alone or in concert with others, Defendant Jewel has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Defendant Synergy including the acts or practices set forth in this Complaint.

60.    Defendant Jewel, the principal director and operator of Defendant Synergy, controls the day-to-day operations of Synergy and directed their employees, agents, salespersons, and solicitors to make TCPA-violating phone calls and solicit their business funding services.

61.    Defendant Jewel approved the telemarketing scripts, signed the contracts, paid commissions for the illegal behavior, and directed the illegal calls to be made for her financial benefit.

62.    Defendant Jewel is not merely a bystander.  She is the mastermind that schemed, planned, directed, initiated, and controlled illegal and fraudulent behavior.

63.    Defendant Jewel directly participates in the calling campaign by being involved in the approval process, signing the contracts, directing the calls be made, and dictating how the calls are to be made.

64.    Defendant Jewel is well aware this conduct violated the TCPA and Tex. DPTA and refused to alter their behavior.  Defendant Jewel is the sole director of Synergy and the only person with the power to make unlawful, fraudulent, and unethical behavior stop.  Yet, Jewel has taken no steps to stop the behavior because the behavior benefits Jewel financially.  Defendant Jewel breaks the law with her eyes and pocketbooks wide open.

65.    Defendants Synergy and Jewel should be held jointly and severally liable for both the TCPA violations and Tex. Bus. Com. Code 302.101 via Tex. DTPA because they actually

committed the conduct that violated the TCPA and Tex. DTPA, and/or they actively oversaw and directed this conduct.

66.    Defendant Jewel should be held liable because to do otherwise would simply allow her to dissolve Synergy and set up a new corporation and repeat their conduct.  This would result in both the TCPA and DTPA being unenforceable.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES
## AS A RESULT OF THE CALLS

67.    Defendants' calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

68.    Defendants' calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

69.    Defendants' calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone line.

70.    Defendants' calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

71.    Plaintiff has been harmed, injured, and damaged by the calls including but not limited to: reduced device storage, reduced data plan usage, invasion of privacy, reduced enjoyment and usage of his cell phone, reduced battery usage, anger, and frustration.

## Plaintiff's cell phone is a residential number

72.    The calls were to Plaintiff's cellular phone 915-XXX-4604, which is Plaintiff's personal cell phone that he uses for personal, family, and household use. Plaintiff maintains no landline phones at his residence and has not done so for at least 10 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses his cell phone for navigation

purposes, sending and receiving emails, timing food when cooking, and sending and receiving

text messages. Plaintiff further has his cell phone registered in his personal name, pays the cell

phone from his personal accounts, and the phone is not primarily used for any business purpose.

### Violations of the Texas Business and Commerce Code § 302.101

73.     The actions of the defendants violated the Texas Business and Commerce Code 302.101

by placing solicitation phone calls to a Texas resident without having a registration certificate

and bond on file with the Texas Secretary of State.

74.     Texas Business and Commerce Code § 302.101 provides a private right of action.  A

violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E,

Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by

Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code §

302.303.

75.     The use or employment by any person of a false, misleading, or deceptive act or practice"

causes "economic damages or damages for mental anguish."  Tex. Bus. & Com. Code § 17.50.

76.     Texas Business and Commerce Code §302.101 states that a person (1) "may not make a

telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas],"

(2) "unless the [person] holds a registration certificate for the business location from which the

telephone solicitation is made."  Tex. Bus. & Com. Code § 302.101(a).

77.     Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek

damages of up to $5000 per violation of §302.101.

### FIRST CAUSE OF ACTION

**Willful and/or Knowing Violation of 47 U.S.C. § 227**
**Telephone Consumer Protection Act of 1991**
**(Against all Defendants)**

15

78.     Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraphs 1-77.

79.     Defendants and/or their agents placed calls to Plaintiff's cellular telephone.

80.     Plaintiff never consented to receive calls from Defendants.  Plaintiff has no relationship with Defendants.

81.     Defendants' calls were made for purposes of advertising and marketing Defendant Wide Merchant business funding services.  These calls constituted commercial advertising and telemarketing as contemplated by the TCPA.

82.     The calls were made using an ATDS to the cellular phone of Plaintiff in violation of 47 U.S.C. § 227(b)(1)(A)(iii) and (B).

83.     As a result of their unlawful conduct, Defendants repeatedly invaded the personal privacy of Plaintiffs, causing Plaintiff to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling Plaintiff to recover $500 in statutory damages for each violation and an injunction requiring Defendants to stop their unlawful calling campaigns.

84.     Not only did Defendants make these violating calls, Defendants and/or their agents did so "knowingly" and/or "willfully' under 47 U.S.C. § 227 (b)(3)(C).

85.     If the Court finds that Defendants willfully or knowingly violated this subsection, the Court may exercise its discretion to increase the amount of the award from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

## SECOND CAUSE OF ACTION

### (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 C.F.R. § 64.1200(C))

### (Against All Defendants)

86.    Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraphs 1-77.

87.    The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute a violation of FCC regulations by making multiple telemarketing solicitations to a consumer on the National Do-Not-Call Registry within a 12-month period in violation of 47 C.F.R. § 64.1200(c)(2).

88.    Defendants called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

89.    Plaintiff was statutorily damaged at least fifty-two (52) times under 47 U.S.C. § 227(c)(3)(F) by the Defendants by the telephone calls described above, in the amount of $500 per call.

90.    Plaintiff is entitled to an award of at least $500 in damages for each such violation.  47 U.S.C. § 227(c)(5)(B).

91.    Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

### **THIRD CAUSE OF ACTION**

**Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)**

**(Against All Defendants)**

92.    Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraphs 1-77.

93.    The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

a.   written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1) [3];

b.   training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2) [4]; and,

c.   in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4). [5]

94.    Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

95.    Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

## FIFTH CAUSE OF ACTION

### (Violations of The Texas Business and Commerce Code 302.101)

### (Against All Defendants)

96.    Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraphs 1-77.

97.    The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 302.101**, by making non-registered solicitation calls to Plaintiff's cellular telephone number without his prior express written consent.

---

[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[5] *See id.* at 425 (codifying a June 26, 2003 FCC order

98.     Plaintiff is entitled to an award of up to $5,000 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 302.302(a)**.

99.     Plaintiff is entitled to recover all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees.  **Texas Business and Commerce Code 302.302(d)**

## I.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brandon Callier prays for judgment against the defendants jointly and severally as follows:

A.     Leave to amend this Complaint to name additional DOESs as they are identified and to confirm to the evidence presented at trial;

B.     A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C.     An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.     An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation and individual for 63 calls.

E.     An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

F.     An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101.

G.     An award to Mr. Callier of damages, as allowed by law under the TCPA;

H.     An award to Mr. Callier of interest, costs, and attorneys' fees, as allowed by law and equity

19

I.      Such further relief as the Court deems necessary, just, and proper.


Dated June 5, 2023,                          Respectfully Submitted,


Brandon Callier
Plaintiff, Pro Se
6336 Franklin Trail Drive
El Paso, TX 79912
915-383-4604